ESTATE OF C(HARLES) MIFFLIN FROTHINGHAM, DECEASED, GELSEY TAYLOR FROTHINGHAM, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5605–71. Filed May 16, 1973.

*Donald William Suchma,* for the petitioner.
*Justin S. Holden,* for the respondent.

The Commissioner determined a $103,046.62 deficiency in the estate tax of the Estate of C(harles) Mifflin Frothingham. As part of a compromise of a will contest the decedent acquired a general power of appointment in respect of a property interest valued at $856,330.01 as of the date of his own death. He exercised that power by will without receiving any consideration, and the property subject to it was includable in his gross estate under section 2041 of the 1954 Code, unless rendered nontaxable by section 2043(a). The principal issue is whether section 2043(a) is applicable by reason of consideration *given* by the decedent in connection with the creation of the power, or whether the consideration referred to in section 2043(a) relates only to consideration *received* by the decedent.

### FINDINGS OF FACT

The parties have filed a stipulation of facts which, together with accompanying exhibits, is incorporated herein by this reference.

The decedent, C(harles) Mifflin Frothingham, died testate on August 18, 1967. His estate tax return was filed with the district director of internal revenue at Boston, Mass., and on the return the gross estate was valued as of the date of death. Gelsey Taylor Frothingham, decedent's widow and the executrix of his "estate," resided in Weston, Mass., at the time of the filing of the petition herein.

The power of appointment representing the subject of the present controversy was acquired by the decedent pursuant to the settlement of a dispute involving the respective wills of decedent's cousin, George Harrison Mifflin, and George's mother, Jane Mifflin. Jane died on October 22, 1935, and George died on November 13, 1959.

Article Seventh of Jane's will, as amended by codicil, provided that the residue of her estate (after the distribution of certain bequests and payment of certain taxes provided for elsewhere in her will) be placed in a trust from which her son George was to receive the net income for his life. In the event that George survived Jane, as he did, article Seventh further directed the trustees to dispose of the trust corpus at his death in the following manner:

to pay over the principal sum to such persons uses or purposes as [George] shall by his will appoint and in default of such appointment to any issue of his then living and in case no issue of his is then surviving to pay the same to those persons who would be entitled to inherit my real estate by the statutes of descent then in effect if I had died intestate

George died leaving written instruments purporting to be his will and a codicil thereto. If the purported will were allowed, the power of appointment created by Jane's will would have been effectively exercised, and the principal of the trust created by Jane's will would have been included in George's residuary estate. Under article Second of George's purported will, if it were allowed, the decedent would have received, for his life, one-fourth of the net income from a trust consisting of one-half of the residuary estate. The net value of that interest is stipulated to have been approximately $19,000 as of the date of George's death.

If George's purported will and codicil had been disallowed, it was likely that the principal of the trust created by Jane's will would have passed in default under the terms of article Seventh of her will and that the remainder of George's estate would have passed under the Massachusetts laws of intestate succession to George's only heirs and next of kin, the decedent and his sister, Eugenia B. Frothingham, in equal shares. The parties have stipulated that the "net value of a one-half interest in George's residuary estate would have been approximately $153,500.00 as of the date of George's death," [1] an amount substantially in excess of the values of the respective interests that would have devolved to the decedent and Eugenia under the purported will and codicil. The decedent and Eugenia contested the admission to probate of the instruments purporting to be George's will and codicil, alleging testamentary incapacity on George's part.

The grounds upon which George's alleged will was attacked were regarded by counsel for the proponent of the will as having considerable merit, and a settlement of the dispute was effected by two "Com-

---

[1] The "residuary estate" mentioned in the stipulation apparently refers to the portion of George's estate remaining after the possible elimination of the corpus of the trust created by Jane's will, and the $153,500 figure presumably represents the value of the interest in George's estate, as thus diminished, that would have passed to the decedent if the purported will and codicil had been disallowed.

promise Agreements" executed late in 1960, one relating to Jane's estate and the other to George's. All parties to those agreements were represented by counsel, and the instruments together reflect a carefully negotiated and comprehensive reallocation of the property interests included in the two estates. The interest passing to the decedent under the terms of the "Compromise Agreements" was provided for by article Second of George's will, which was amended by the agreement relating to his estate to read, in relevant part, as follows:

SECOND: Under the will of my mother, Jane A. Mifflin, I may have the power to appoint by my will certain property. If I possess such power at my death, I intend to and hereby do exercise such power to the extent of one fourth of said property and no more, hereby declining to exercise said power as to the remaining three fourths thereof.

All the rest, residue, and remainder of my property, of whatever name and nature and wherever situate, and including said one fourth of the property held in trust under the will of my said mother, Jane A. Mifflin, I give, devise, and bequeath to my Trustees to hold, manage, invest, and reinvest the same and to dispose of as hereinafter provided. The Trustees shall divide the trust property into two equal shares and shall hold and dispose of said shares as follows:

A. The Trustees shall, until the death of the survivor of my cousin, C. Mifflin Frothingham, and his wife, Gelsey T. Frothingham, pay the net income from one such share to said C. Mifflin Frothingham and his estate or to such persons as he may appoint by a written instrument delivered to the Trustees in his lifetime or by his last will and testament. Upon the death of the survivor of said C. Mifflin Frothingham and Gelsey T. Frothingham, the Trustees shall dispose of said share as hereinafter provided * * *

On or about December 16, 1960, George's purported will and codicil were admitted to probate by the Probate Court for Suffolk County, Mass., subject to the "Compromise Agreement" relating to his estate. The court's action was approved by the attorney general of Massachusetts. On or about the same date, the Probate Court approved the "Compromise Agreement" relating to Jane's estate. The net value of the interest received by the decedent under article Second of George's will, as amended by the "Compromise Agreement," is stipulated to have been $116,931.96 as of the date of George's death, and the income interest subject to the power of appointment which the decedent thus received is stipulated to have had a value of $856,330.01 as of the date of his death. By article First of the decedent's will, which was admitted to probate by the Probate Court for Middlesex County, Mass., on September 22, 1967, the decedent bequeathed to his surviving spouse all property over which he had a power of appointment.

A schedule and documents accompanying the decedent's estate tax return disclosed the existence of the power of appointment acquired by the decedent through the aforementioned settlement proceedings, the circumstances surrounding its acquisition, and the value of the income interest to which it related. No value was included in the gross

estate, however, in respect of that power on the asserted theory that it "was created in a transaction (will compromise) which constituted a bona fide sale (of expectancy under will contest) for an adequate and full consideration in money or money's worth (power of appointment over one-half income for life of survivor of decedent and spouse)." The Commissioner determined that the value of the property subject to the power of appointment ($856,330.01) was includable in the decedent's gross estate.

OPINION

Raum, *Judge:* There is no dispute between the parties that the decedent at his death had a "general power of appointment" over an asset having a value of $856,330.01, that he exercised that power of appointment, and that section 2041 [2] of the 1954 Code calls for the inclusion of that amount in his gross estate unless some other provision of the statute requires a different result. Petitioner contends, however, that the property passing under the decedent's power is excludable from his gross estate by reason of section 2043(a), which provides:

SEC. 2043. TRANSFERS FOR INSUFFICIENT CONSIDERATION.

(a) IN GENERAL.—If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent.

It is petitioner's theory that the compromise agreement through which George's will was amended to grant the decedent the power of appointment here in issue represented a "bona fide sale for an adequate and full consideration in money or money's worth," and that there-

---

[2] SEC. 2041. POWERS OF APPOINTMENT.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—

(1) POWERS OF APPOINTMENT CREATED ON OR BEFORE OCTOBER 21, 1942.—To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent—

(A) by will * * *

* * * * * * *

(2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. * * *

* * * * * * *

(b) DEFINITIONS.—For purposes of subsection (a)—

(1) GENERAL POWER OF APPOINTMENT.—The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate * * *

fore section 2043(a) renders section 2041(a) inoperative. The requisite consideration, the argument goes, is to be found in the decedent's bargained-for relinquishment of the interest he had sought as George's heir by intestacy. The Commissioner argues that whether the decedent *paid* any consideration for the power of appointment is irrelevant, that the "adequate and full consideration" clause in section 2043(a) refers only to consideration *received* by the decedent in connection with the property passing under the power at his death, that he received no consideration in that respect, and that section 2041(a) remains operative, unaffected by section 2043(a).[3] We hold that the Commissioner is correct.

It is important that the structure of the estate tax statute and the part played therein by the "adequate and full consideration" clause be kept clearly in mind. Sections 2035–2038 deal with various types of inter vivos transfer that are regarded as testamentary in character and are therefore included in a decedent's gross estate—e.g., transfers in contemplation of death, transfers taking effect at death, and revocable transfers. In each case the property transferred is includable in the gross estate, but in each of the sections 2035–2038 there is a parenthetical clause rendering the provisions inoperative "in case of a bona fide sale for an adequate and full consideration in money or money's worth." This clause first appeared in the estate tax law in the Revenue Act of 1926.[4] See, e.g., sec. 302(c) of that Act.

The obvious purpose of the clause was to relieve of estate tax those transfers, etc., in respect of which the decedent-transferor had *received* an equivalent amount of consideration. Thus, where the transferred property is replaced by other property of equal value received in exchange, there is no reason to impose an estate tax in respect of the transferred property, for it is reasonable to assume that the property acquired in exchange will find its way into the decedent's gross estate at his death unless consumed or otherwise disposed of in a nontestamentary transaction in much the same manner as would the transferred property itself had the transfer not taken place. Stated differently, the aim of the "consideration" provisions in the Federal gift

---

[3] The Commissioner also makes an alternative argument that the decedent "did not bargain for or give anything in exchange for his status as an heir and potential legatee" of George, and that the "determination of the exact interest to be received by the decedent * * * [under] the compromise agreements did not change the fact that the decedent received the interest in question pursuant to" George's will "as finally probated" without the payment of any consideration. We do not pass upon this alternative position as to whether the decedent *gave* any consideration for the power of appointment, because, in our view, the relevant inquiry under the statute is whether he *received* any consideration in connection with the property passing under the power at his death.

[4] Predecessor provisions first appeared as early as 1916, when the first modern Federal estate tax law was enacted. Sec. 202(b) of the Revenue Act of 1916, ch. 463, 39 Stat. 756. However, successive changes in the revenue acts narrowed the scope of the clause until it finally assumed the wording in the 1926 Act. Cf. *Taft* v. *Commissioner*, 304 U.S. 351, 356.

and estate tax laws "was to prevent the depletion of the transferor's or decedent's estate, unless a tax was paid on the transfer, by requiring that the transferor or decedent receive in exchange something of the same money value." *Commissioner* v. *Bristol*, 121 F. 2d 129, 134 (C.A. 1). See 1 Mertens, Law of Federal Gift & Estate Taxation, sec. 5.03, p. 250 (1959) ; *Estate of John M. Goetchius*, 17 T.C. 495, 505. Cf. *Commissioner* v. *Wemyss*, 324 U.S. 303, 307 ; *Lovering* v. *United States*, 318 F. Supp. 215, 217 (S.D. N.Y.).[5]

In short, unless replaced by property of equal value that could be exposed to inclusion in the decedent's gross estate, the property transferred in a testamentary transaction of the type described in the statute must be included in his gross estate. The only consideration involved is the consideration *received* by the decedent. The consideration, if any, given by the decedent is of no greater consequence than the amount, if any, that he may have paid for property which he owns at his death and which is included in his gross estate at its fair market value as of that time. It is with the foregoing as background that the meaning and scope of section 2043(a) must be examined.

The provision which is now section 2043(a) of the 1954 Code was introduced into our estate tax law through section 302(i) of the Revenue Act of 1926, ch. 27, 44 Stat. 9. It has remained substantially unaltered since its enactment. Neither the report of the House Ways and Means Committee, H. Rept. No. 1, 69th Cong., 1st Sess. (1925), nor that of the Senate Finance Committee, S. Rept. No. 52, 69th Cong., 1st Sess. (1926), accompanying the 1926 legislation, contains any mention of any such provision, for section 302(i) was first added to the bill by the Conference Committee. H. Rept. No. 356, 69th Cong., 1st Sess., pp. 9–10 (1926). Nonetheless, the purpose of section 302(i) is far from obscure. It was plainly designed to deal with the situation where the decedent has received some, but not "adequate and full," consideration for the transfer. In providing that there shall be included in the gross estate "only the excess of the fair market value at the time of death of the property * * * over the value of the consideration *received* therefor by the decedent" (emphasis supplied), Congress was obviously attempting merely to provide a measure of relief from double taxation of the same economic interest. See *Updike* v. *Commissioner*, 88 F. 2d 807, 813 (C.A. 8), certiorari denied 301 U.S. 708. We have found no support whatever for petitioner's contention that Congress may have intended to relieve from estate tax

---

[5] A similar policy underlies the provisions of sec. 2053(c)(1)(A) of the 1954 Code which allows deductions for claims, etc., against the estate in specified situations only when based on "an adequate and full consideration in money or money's worth." See *Estate of Charles L. Woody*, 36 T.C. 900, 903–904. Cf. also secs. 2040, 2056(b)(1)(A), 2106(a)(1), 2512(b), 2515(a), 2516, 2522(c)(2), 2523(b)(1), and 6323(h)(6).

property passing under a general power of appointment that was "created" for a consideration supplied by the decedent himself.

Petitioner merely isolates the word "created" in section 2043(a) and assumes that since the power of appointment in issue was "created" for an "adequate and full" consideration furnished by the decedent at the time of the dispute with respect to George's will, the property passing under that power may not be included in his gross estate. Petitioner argues that a literal reading of the statute requires that result. We disagree. The language of section 2043(a) certainly does not call for that interpretation. Section 2043(a) is concerned not only with powers of appointment but also with transfers of the character dealt with in sections 2035–2038, and it seems likely that the word "created" was intended to relate to "trusts" or "interests" involving such transfers for which the decedent received consideration, rather than to powers of appointment. The portion of section 2043(a) that more appropriately relates to "powers" is the language "exercised, or relinquished for a consideration in money or money's worth"—language that clearly contemplates the *receipt* of consideration by the decedent, not the payment of consideration by him. And finally, the last clause in section 2043(a) refers explicitly to "the consideration received therefor by the decedent."

Petitioner's suggestion that the term "consideration" has a narrower meaning in the context of the last clause than in other parts of section 2043(a) is justified neither by the purpose of the "consideration" clauses nor by accepted principles of statutory construction. Cf. *Commissioner* v. *Wemyss*, 324 U.S. at 307–308, where the Court, albeit in somewhat different circumstances, construed the term "consideration" in a similar provision of the gift tax laws to mean "consideration received." And any remaining force in petitioner's argument may be met by interpreting the term "created," even if used in the context of "powers created," to comprehend an act only of the decedent, not another person.[6]

Although petitioner has not referred us to any legislative history, decisions, or other relevant materials supporting its position, it urges that we are required to follow what it describes as the "literal"

---

[6] In response to the argument "that if Section 2043 has any application to powers created for consideration, such application is limited to powers created by the decedent in exchange for a consideration received by the decedent," petitioner asserts "that if this were so, the language of Section 2043 relating to powers created for consideration would be pointless, as the property subject to the power would be included in the decedent's gross estate under Section 2033 (together with the consideration received by the decedent for creating the power)." Insofar as petitioner's position has any merit, it may be answered by a statement of the Supreme Court, which although made in a different context, is equally applicable here: "Plainly, the explicitness was one of cautious redundancy to prevent 'subversion of the legislative intent'." *Merrill* v. *Fahs*, 324 U.S. 308, 312. See also fn. 7 *infra*.

meaning of section 2043(a), citing *Crooks* v. *Harrelson*, 282 U.S. 55, 59–60. However, as indicated above, it is far from clear that the literal meaning supports petitioner's reading of the statute. At best, the statute is murky,[7] and there is no basis for holding that the existence of doubts requires a decision in petitioner's favor. As stated by the Supreme Court in *White* v. *United States*, 305 U.S. 281, 292: "it is the function and duty of courts to resolve doubts. We know of no reason why that function should be abdicated in a tax case more than in any other where the rights of suitors turn on the construction of a statute and it is our duty to decide what that construction fairly should be." Moreover, if petitioner's interpretation of the statute is correct, a ready means for avoidance of estate taxes would spring to light, for one could simply arrange a transfer of assets to someone else in exchange for the "creation" of a power of appointment; and at death the holder of the power could exercise it in favor of the objects of his bounty without incurring any estate tax in respect of either the power or the funds that he used to purchase it. We think that Congress has not provided any such easy means for avoidance of estate taxes. "And it is a recognized canon of statutory construction, particularly applicable with respect to the phrase 'adequate and full consideration in money or money's worth,' that the legislative language will not be construed so as to 'encourage tax avoidance,' *Merrill* v. *Fahs*, 324 U.S. 308, 313, or to 'open wide the door for evasion,' *Commissioner* v. *Wemyss*, 324 U.S. 303, 308." *Estate of Frances R. Pollard*, 52 T.C. 741, 745.

In order to reflect an agreement of the parties that petitioner is entitled to an estate tax credit for tax on prior transfers,

*Decision will be entered under Rule 50.*

---

[7] Sec. 2043(a) is hardly a model of skillful draftsmanship. Other confusing elements of the statute have been noted. See *Estate of Donald M. Nelson*, 47 T.C. 279, 289–290, reversed on other grounds 396 F. 2d 519 (C.A. 2).