**Margaret A. NEELY, as Personal Representative of the Estate of Doyle E. Neely, Deceased,**

v.

**The UNITED STATES.**

No. 236–78.

United States Court of Claims.

Jan. 23, 1980.

Stanley W. Rosenkranz, Tampa, Fla., attorney of record, for plaintiff. Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., of counsel.

Donald P. Lan, Jr., Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant. Theodore D. Peyser, Jr., and Robert S. Watkins, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, KUNZIG and BENNETT, Judges.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

BENNETT, Judge:

Margaret A. Neely, as the personal representative of the estate of her husband, Doyle E. Neely, sues for the refund of additional estate taxes assessed by the Commissioner of Internal Revenue. The additional assessment was attributable to the inclusion by the Commissioner of the value of an annuity in decedent's gross estate under I.R.C. § 2039. The case is before the court on cross-motions for summary judgment. We hold for defendant.

The decedent, Mr. Neely, worked for Blocker Storage & Transfer Company (Blocker) from the mid-1930's until his retirement on January 1, 1973. Blocker is a Florida corporation engaged in the business of local and interstate moving and hauling at St. Petersburg, Florida. From October 1964 until the time of his death, Mr. Neely held approximately 51 percent of the stock of Blocker and, during the same period, his wife held approximately 20 percent of the stock of Blocker. All of the remaining stock of Blocker was held by the Neelys' two daughters and their husbands. These six stockholders constituted Blocker's entire board of directors from 1966 up to the time of Mr. Neely's death, and the remaining five stockholders have been the only directors since that time. Additionally, since 1966 all of the officers of the corporation

have been drawn from this group of stockholder-directors.

In the mid-1960's, Mr. Neely reduced his day-to-day contact with Blocker. At the same time, Mr. Neely's two sons-in-law began to assume more of the responsibility for Blocker's operation. The minutes of Blocker's board of directors for December 28, 1972, indicate that the following actions were taken:

> Chairman Neely announced his retirement as of January 1, 1973. After discussion it was decided that Mr. Neely would be retained as Chairman of the Board and as a consultant at a total compensation of $100.00 per month and paid a pension of $1000.00 per month which in event of his death, is to be paid to his wife until her death, then cease. This pension is for his long faithful employment of 42 years with the company.

Effective January 1, 1973, Mr. Neely retired from the employment of Blocker. After his retirement, Mr. Neely performed the minimal duties required of him as a consultant, for which he was paid $100 per month for 3 months. Mr. Neely also received his pension of $1,000 per month from Blocker for the first 3 calendar months of 1973. On April 11, 1973, Mr. Neely died. He did not suffer from any debilitating illness for any length of time prior to his death. After Mr. Neely's death, Blocker continued to make the monthly payments to Mrs. Neely.

The funds utilized to pay Mr. Neely and, later, Mrs. Neely, came from Blocker's operating revenues. No annuity contract was purchased by Blocker to pay Mr. Neely's pension, nor did Blocker make any contributions to a separate fund established to pay annuities to employees.[1] Blocker claimed a business expense deduction on its 1973 and 1974 federal income tax returns for the payments to Mr. and Mrs. Neely, and the payments received by them were included

---

1. It is immaterial to the application of I.R.C. § 2039 that the employer did not formally make "contributions" to a separate fund, or actually purchase annuity or like contracts. *Estate of Bahen v. United States*, 305 F.2d 827, 833, 158 Ct.Cl. 141, 152 (1962).

in gross income on their federal income tax returns.[2]

Mr. Neely left a simple will devising his entire probate estate to Mrs. Neely. On October 4, 1976, the Internal Revenue Service issued to the estate an Account Adjustment Bill for Tax Due. Mrs. Neely as the personal representative of her husband's estate paid the tax and interest assessed by the Service and filed a claim for refund, which was disallowed in full on February 9, 1978. Plaintiff then timely filed the present suit before this court.

I.R.C. § 2039 is the sole ground asserted by defendant, for the inclusion in Mr. Neely's gross estate of the value of the annuity payable to Mrs. Neely after his death. Plaintiff offers two arguments in support of her contentions that no amount should be included in decedent's gross estate because of the annuity passing to her. First, plaintiff argues that one critical element of section 2039(a), the presence of a contract or agreement, is missing. Second, under section 2039(b) the amount to be included in the gross estate depends on whether the payments by Blocker were "made by reason of his [decedent's] employment." Plaintiff argues that payments in recognition of past services are not made by reason of the decedent's employment.

I

Section 2039(a) provides:

(a) GENERAL

The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

There is no dispute between the parties regarding the presence of most of the elements necessary for the application of section 2039(a). The payments made to Mr. Neely during his lifetime and to Mrs. Neely after his death are annuity payments in the traditional sense of the term. The annuity was receivable by Mrs. Neely by reason of surviving Mr. Neely. While it is not so clear that Mr. Neely possessed a right to receive the annuity, the satisfaction of the alternative test is not in doubt since Mr. Neely received annuity payments for a period which did not in fact end before his death.

Plaintiff contends that under Florida law the payments to Mrs. Neely (and presumably also to Mr. Neely) were gratuitous and not enforceable by her (or him) and that therefore the annuity was not receivable "under any form of contract or agreement" as required by the statute.[3] Somewhat similar resolutions of the boards of directors of three closely held corporations were considered in *Estate of Bogley v. United States*, 514 F.2d 1027, 206 Ct.Cl. 695 (1975).[4]

**2.** The income tax treatment of the payments by Blocker and by Mr. and Mrs. Neely supports our conclusion that the value of the annuity should be included in the decedent's gross estate under section 2039(a), although such treatment alone is not grounds for the application of section 2039. I.R.C. § 274(b) bars the deduction as a business expense of gifts of more than $25 per individual per year. Payments to an employee will be treated as income and not as gifts excludable from the employee's gross income under I.R.C. § 102 even in the absence of any obligation on the employer if, at bottom, they are a recompense for past services or an inducement of further services in the future.

*Commissioner v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

**3.** It is well established that all elements of section 2039 must be present before the value of any payments may be included in the decedent's gross estate. *Kramer v. United States*, 406 F.2d 1363, 1366, 186 Ct.Cl. 684, 689 (1969).

**4.** Defendant in *Bogley* did not attempt to include the payments in decedent's gross estate under section 2039 and, unlike the present case, conceded that if the corporations were not contractually obligated to make the payments, no inclusion should be made. Defend-

These resolutions in general provided that in consideration of past services and services to be rendered by the decedent and other officers, the corporation was authorized upon the death of any of these officers to pay an amount equivalent to 2 years' salary to the decedent's estate or named beneficiary. Based on principles of general contract and corporation law, two of the resolutions were held to be merely expressions of intention or corporate policy, and not contracts or offers to contract which would bind the corporation. Only the third resolution, which expressed an intent to impose a contractual obligation on the corporation, was held to be a binding promise and offer to make payments to the decedent's estate or beneficiary. In the present case, the resolution of Blocker's board of directors contains no clear expression of an intent to impose a contractual obligation. In addition, plaintiff contends that, unlike the resolutions in *Bogley*, Blocker's resolution was solely in recognition of past services and that past consideration is insufficient to support a contract. *See* Williston, Contracts § 142 (3d ed. 1957).

Defendant argues that, even if Mrs. Neely could not enforce the payment of her annuity, the requirement of a contract or agreement should be deemed to be satisfied. We agree although our reasoning differs somewhat from that of defendant.[5]

Treas.Reg. § 20.2039–1(b)(1) (1976) provides in pertinent part:

> * * * The term "contract or agreement" includes any arrangement, understanding or plan, or any combination of arrangements, understandings or plans arising by reason of the decedent's employment. An annuity or other payment "was payable" to the decedent if, at the time of his death, the decedent was in fact receiving an annuity or other payment, whether or not he had an enforceable right to have payments continued.

The decedent "possessed the right to receive" an annuity or other payment if, immediately before his death, the decedent had an enforceable right to receive payments at some time in the future, whether or not, at the time of his death, he had a present right to receive payments. In connection with the preceding sentence, the decedent will be regarded as having had "an enforceable right to receive payments at some time in the future" so long as he had complied with his obligations under the contract or agreement up to the time of his death.

Based on the second sentence quoted above, defendant argues that there is no need for an enforceable contract in cases in which an annuity was being paid to the decedent as opposed to cases in which the decedent had only a right to receive payments in the future. While defendant relies upon the lack of any need for enforceability by the decedent, plaintiff focuses on the need for enforceability by the surviving beneficiary because of the requirement of a "contract or agreement." The second quoted sentence purports to deal only with the "payable" test while the first quoted sentence defines the term "contract or agreement." Nevertheless, if the regulation is to be construed in a harmonious fashion, the second quoted sentence must be considered as putting a gloss on the requirement of a "contract or agreement," at least as applied to payments to the decedent. This gloss is an appropriate interpretation of the statute since no estate tax is imposed until it is determinable whether the decedent in fact received payments up to the time of his death. If he did, the fact that he could not enforce such payments is no longer relevant.

Because the statute uses the term "contract or agreement" twice, to refer to the payments to both the decent and to the beneficiary, it might be inferred that the

ant's approach in *Bogley* was dictated by the absence of any payments, or any right to receive payments, other than salary on the part of the decedent. Section 2039 does not apply in such situations. *Estate of Fusz v. Commissioner*, 46 T.C. 214 (1966), *acq.*, 1967–2 C.B. 2.

5. Therefore, we do not reach the question of whether either Mr. or Mrs. Neely could enforce the payment of his or her annuity.

same gloss should be applied in "payable" cases with respect to the enforceability of the contract or agreement by the beneficiary. We reject any such inference however. The requirement of a "contract or agreement" must be given a flexible interpretation to meet the differing situations of the decedent and the beneficiary.[6] If section 2039 applies to an annuity, the present value of the future payments to the beneficiary will be included in the gross estate of the decedent. In contrast to the situation of a decedent in a "payable" case, the enforceability of the future payments by the beneficiary is still very much relevant. It would be entirely inappropriate to judge the requirement of a "contract or agreement" as applied to the payments to the beneficiary by a lesser standard in "payable" cases than in "right to receive" cases. Which of the two alternative tests was met by the interest held by decedent has no relevance to the question of whether the beneficiary's interest is sufficiently "vested" to warrant the inclusion of the annuity in the gross estate.[7]

We therefore must look to the first, and not the second, sentence quoted above to decide whether a contract enforceable by the beneficiary is required by the regulation. In using the words "any arrangement, understanding or plan," the regulation clearly seeks to encompass more than just enforceable contracts.[8] Treasury regulations must be held valid unless unreasonable or inconsistent with the statute. They are entitled to respectful consideration and will not be overruled except for weighty reasons. *Fawcus Machine Co. v. United States*, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397 (1931); *see also Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501, 503, 68 S.Ct. 695, 92 L.Ed. 831 (1948); *Commissioner v. Wheeler*, 324 U.S. 542, 546–47, 65 S.Ct. 799, 89 L.Ed. 1166 (1945).

The statute reads "any form of contract or agreement." By using the words "any form" and "agreement" instead of the word "contract" alone, Congress intended to broaden the scope of section 2039(a).[9]

**6.** The Government itself in Treas. Reg. § 20.2039–1(b)(2), Example (6), takes the view that a survivor's annuity paid by an employer of the decedent may be includible even though it was not paid under the same contract or agreement as the annuity paid to the deceased employee. The courts have agreed with this flexible approach. *Gray v. United States*, 410 F.2d 1094, 1104–06 (3d Cir. 1969); *All v. McCobb*, 321 F.2d 633, 636 (2d Cir. 1963); *Estate of Bahen v. United States, supra*, 305 F.2d at 835, 158 Ct.Cl. at 154–56.

**7.** *See* C. Lowndes, R. Kramer & J. McCord, Federal Estate and Gift Taxes (3d ed. 1974) at 250–51, which considers this problem of reconciling the regulations interpreting the "payable" and "contract or agreement" requirements, but which reaches a different conclusion.

**8.** The examples in Treas.Reg. § 20.2039–1(b)(2) reinforce this conclusion. In Example (2) a survivor's annuity which was forfeitable upon the remarriage of the survivor was held to be includible under section 2039, and the element of forfeitability was deemed to be significant only with respect to the valuation of the annuity. In Example (4) an employee died prior to retirement which disqualified his designated beneficiary from receiving an annuity. The employer nevertheless paid an annuity to the beneficiary. Because of the absence of a legal obligation to pay, it was held that the annuity

was not paid under a "contract or agreement." However, it was further stated that the annuity would be considered paid under a "contract or agreement" if the employer had consistently paid an annuity under such circumstances.

**9.** The court in *Gray v. United States, supra*, 410 F.2d at 1106, stated that section 2039 is a departure from common law notions and that Congress did not necessarily intend that the words "contract or agreement" should be considered in terms of traditional property or contract law. However, since the court found the contract to be enforceable, it did not decide whether "in using the phrase 'contract or agreement' in § 2039 Congress intended to create a unique, 'federal' type of contract relationship limited to estate tax purposes * * *." The Tax Court in *Estate of Barr v. Commissioner*, 40 T.C. 227, 235–36 (1963), *acq. in result only*, 1978–1 C.B. 1, has taken a contrary view and stated: "The repeated reference (in both subsections (a) and (b)) to the requirement for some form of contract or agreement, indicates that the rights of both the decedent and the survivor must be enforceable rights; and that voluntary and gratuitous payments by the employer are not taxable under section 2039. * * Congress, for reasons satisfactory to it, has made the existence of some form of 'contract or agreement' an indispensable prerequisite to the application of section 2039."

While in one sense of the word the term "agreement" is synonymous with the term "contract," it also means "an arrangement as to a course of action." Webster's New Collegiate Dictionary (1977). The committee reports [10] accompanying the enactment of section 2039 state:

> * * * Under present law the value at the decedent's death of a joint and survivor annuity purchased by him is includible in his gross estate. It is not clear under existing law whether an annuity of that type purchased by the decedent's employer, or an annuity to which both the decedent and his employer made contributions is includible in the decedent's gross estate.

Thus, the focus of section 2039 was employment-related annuities which often are not as formal as annuity contracts with an insurance or investment company. Attempts to tax the survivor's benefits under the predecessors of sections 2033, 2035, and 2038 would fail if the employee's rights were forfeitable, so that he had only an "expectancy" as distinguished from a "vested interest." [11] Congress apparently intended to sweep at least some of these less formal employment-related annuities into the gross estate through section 2039. Since the exact extent which Congress intended to reach is not clear, the discretion of the Commissioner in interpreting the statute through regulations should be affirmed.

Therefore, our decision hinges on whether the resolution of Blocker's board of directors should be considered to be an "arrangement, understanding or plan" within the meaning of Treas.Reg. § 20.2039–1(b)(1). None of the prior decisions under section 2039 are helpful in this regard. With only one exception, *Estate of Barr v. Commissioner*, 40 T.C. 227 (1963), *acq. in result only*, 1978–1 C.B. 1, all of the cases under section 2039 appear to have involved an enforceable contract which clearly was an "arrangement, understanding or plan." [12] The facts presented in *Barr* differ greatly from those here. The decedent was an employee of Eastman Kodak Company and had no significant interest in the company as a stockholder. Because the decedent died before the close of the year, neither he nor his estate had a right to the wage dividend usually paid to employees by the company. However, in such situations, the board of directors, after investigation into the financial circumstances of the deceased employee's family, "would usually, but not always, approve payment of an amount equivalent to the wage dividend the employee would have received if he had lived and otherwise qualified therefor." 40 T.C. at 229. The Tax Court found that there was no "contract or agreement" because the decedent and surviving beneficiary had no enforceable rights. [13]

█ Unlike the *Barr* case, any requirement of enforceability here would be an empty formality. After Mr. Neely's death

---

**10.** S.Rep.No.1622, 83d Cong., 2d Sess. 123 (1954), *reprinted in* [1954] U.S.Code Cong. & Admin.News, pp. 4621, 4756–57. *See also* H.Rep.No.1337, 83d Cong., 2d Sess. 90 (1954), *reprinted in* [1954] U.S.Code Cong. & Admin. News, pp. 4017, 4117.

**11.** C. Lowndes, R. Kramer & J. McCord, Federal Estate and Gift Taxes (3d ed. 1974) at 241–42.

**12.** The plan under which payments were made was expressly found to be irrevocable in *Estate of Bahen v. United States, supra*, 305 F.2d at 830, 158 Ct.Cl. at 146, and enforceable in *Gray v. United States,. supra*, 410 F.2d at 1106. The agreement in *Hetson v. United States*, 209 Ct.Cl. 691 (1976), adopting the trial judge's opinion in No. 512–71 (Sept. 16, 1975), involved reciprocal promises between stockholders in a

family corporation and would appear to have been enforceable although there is no specific holding on this point.

**13.** The Tax Court in *Barr* stated that an enforceable contract was a prerequisite to the application of section 2039. *See* note 9 *supra*. Such statements must be regarded as *obiter dictum* since the decision in *Barr* is not necessarily inconsistent with Treas.Reg. § 20.2039–1(b)(2), Example (4), which held that a consistent practice of making payments may be sufficient. *See* note 8 *supra*. The Commissioner in acquiescing with the result only of the *Barr* decision, 1978–1 C.B. 1, is apparently now of the view that greater consistency than that found in *Barr* is necessary before the arrangement becomes a "contract or agreement."

plaintiff held approximately 70 percent of the stock of Blocker either personally or as the personal representative of Mr. Neely's estate. Her daughters and sons-in-law held the remainder. These same persons were the officers and directors of the corporation. Any possibility that the annuity payments to plaintiff would cease other than through a voluntary renunciation is extremely remote.[14] We need not explore the outer boundaries regarding the extent to which section 2039(a) may apply to legally unenforceable arrangements, but to allow the annuity in this case to escape inclusion under section 2039(a) would seriously erode that section with regard to pensions and death benefits paid by a closely held corporation with any knowledgeable tax planning.[15]

## II

Section 2039(b) provides:

(b) AMOUNT INCLUDIBLE

Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment.

Plaintiff argues that no portion of the value of the annuity should be included under section 2039(b) because payments in recognition of past services are not made by reason of the decedent's employment. Plaintiff's argument is based on S.Rep.No. 1622,[16] which states:

The contributions of an employer * * shall be considered to have been made by reason of decedent's employment if, for example, the annuity or other payment is offered by the employer as an inducement to employment, or a continuance thereof, or if the contributions are made by the employer in lieu of additional compensation or other rights, if so understood by employer and employee whether or not expressly stated in the contract of employment or otherwise.

■ Defendant argues that inducement is not necessary and that the appropriate test is whether the payments would not have been made "but for" the decedent's employment. Treas.Reg. § 20.2039–1(c) similarly adopts an expansive interpretation of section 2039(b) by requiring the inclusion of any amount attributable to a contribution "made by his [decedent's] employer (or former employer) for any reason connected with his employment * * *." Plaintiff does not appear to dispute that the "but for" test (if appropriate) is met in this case.[17]

We agree with defendant that the "but for" test should be used. The examples

**14.** Plaintiff has cited *Frank v. Anthony*, 107 So.2d 136 (D.C.A.Fla.1958), to show that a majority stockholder may not summarily dismiss the directors of the corporation. Families do sometimes disagree, and it is possible that in the short run the other directors of Blocker could terminate Mrs. Neely's annuity, but such a possibility is negligible because of the control which Mrs. Neely could exercise over the corporation in the long run.

**15.** Plaintiff's last argument is that a decision based on the closely held nature of Blocker would cause a dual inclusion, *i. e.*, the value of the business at death undiminished by the later voluntary payment, plus the amount of the post-death payment. Acceptance of plaintiff's argument would cause an underinclusion since

the estate tax was imposed on only 51 percent of the value of Blocker. The valuation of the stock of Blocker is not before the court in this action, but we are convinced that if there is any merit to plaintiff's argument, the elimination of any dual inclusion should be done through the valuation of the stock and not through the exclusion of the annuity.

**16.** S.Rep.No.1622, *supra* note 10, at 471, [1954] U.S.Code Cong. & Admin.News at p. 5115.

**17.** As noted above, the resolution of the board of directors approving the payments to the Neelys expressly states that the pension is for Mr. Neely's long, faithful employment of 42 years with the company.

given in the legislative history were not intended to be exhaustive. The purpose of the ratio created by section 2039(b) is well illustrated by Treas.Reg. § 20.2039–1(c), Example (1). In the example, the amount includible in the gross estate was held to be one-half of the value of the survivor's annuity where the decedent and his wife had each contributed equal amounts towards the purchase of a joint and survivor annuity. In enacting section 2039(b) Congress concluded that it would be inappropriate to include in the gross estate the value of an annuity attributable to contributions by the surviving beneficiary or contributions from another as a gift.[18] The value attributable to such contributions does not represent accumulated wealth of the *decedent* which should be subject to the estate tax. However, the value attributable to contributions by an employer which would not have been made but for the decedent's employment represents taxable wealth of the decedent accumulated through his labor. Such value should not be attributed to the survivor or treated as a gift.

## CONCLUSION

Accordingly, we hold that the value of the survivor's annuity is includible in the decedent's gross estate under section 2039(a) and that, in calculating the amount includible under section 2039(b), all payments by Blocker should be treated as made by reason of decedent's employment. Defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, and the petition is dismissed.

---

18. Congress in enacting subsections (c), (d), and (e) of section 2039 has carved out additional specific rules with respect to the exclusion from the gross estate of various types of annuities paid by an employer or through an individual retirement account. In attributing the contributions of an employer to the decedent if made by reason of the decedent's employment, Congress was attempting to expand the coverage of section 2039. It was not attempting to supplement these specific exclusions with an undefined general exclusion.