122 T.C. No. 24


UNITED STATES TAX COURT



ISMAT M. ABEID, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10441-02.                    Filed June 29, 2004.


P, a nonresident alien residing in Israel during 1997, 1998, and 1999 (years in issue), became entitled to 20 annual payments of $722,000 each by virtue of a 1992 purchase of a $1 ticket that won a lottery sponsored by the State of California. P received a payment of $722,000 from the California State Lottery in each of the years in issue. P filed U.S. Federal income tax returns for those years in which he took the position that the payments were not subject to U.S. tax.

R determined that the payments were subject to U.S. tax under sec. 871(a)(1)(A), I.R.C., resulting in a deficiency for each year in issue. P contends that the payments constitute "annuities" within the meaning of par. (5) of art. 20 of the Income Tax Convention, Nov. 20, 1975, U.S.-Isr., Hein's No. KAV 971, at xxii (treaty) and are therefore exempt from U.S. tax pursuant to paragraph (2) of Article 20 of the treaty, which provides that "annuities" shall be taxable only in the jurisdiction in which the recipient resides.

Held: The payments at issue are not "annuities" as that term is defined in the treaty, because they were not paid "under an obligation to make the payments in return for adequate and full consideration" as provided in the treaty. Accordingly, the payments are subject to U.S. tax as determined by R.

Donald L. Feurzeig, for petitioner.

Paul R. Zamolo and Rebecca Duewer, for respondent.

OPINION

GALE, Judge: This case is before us on the parties' cross-motions for summary judgment under Rule 121.[1] The issue for decision is whether certain payments received by petitioner from a lottery operated by the State of California (California State Lottery) are exempt from U.S. taxation pursuant to the Income Tax Convention, Nov. 20, 1975, U.S.-Isr., Hein's No. KAV 971 (U.S.-Israel Income Tax Treaty or treaty).

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials,

---

[1] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code for the taxable years in issue.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(a) and (b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). In the instant case, the parties agree that there are no genuine issues of material fact and that judgment may be rendered as a matter of law.

In support of their respective motions, each party has submitted a memorandum of points and authorities. A hearing on the motions was also held.

The parties do not dispute that, at the time of filing of the petition, petitioner was a resident of Israel.[2]

During 1992, while residing in California, petitioner, an Israeli citizen, purchased a California State Lottery ticket for $1. That ticket won the "Super Lotto" lottery, entitling petitioner to receive annual payments of $722,000 from the California State Lottery for 20 years. Petitioner did not have a choice as to the timing or manner of payment of his lottery winnings.

During 1997, 1998, and 1999 (years in issue), petitioner resided in Israel. For each of the years in issue, petitioner received payments of $722,000 in California State Lottery

---

[2] The parties have stipulated that review of this case shall be by the U.S. Court of Appeals for the D.C. Circuit.

winnings but did not report these amounts as income on his Federal income tax returns (filed as a nonresident alien). For purposes of computing his Israeli income tax liability for the years in issue, petitioner took the position that the payments were lottery winnings, exempt from Israeli income tax. Petitioner did not pay any Israeli income tax on account of the payments.

In a notice of deficiency, respondent determined that the lottery payments were includible in petitioner's taxable income pursuant to section 871(a)(1)(A), resulting in a deficiency of $216,600 for each year in issue. In his petition, petitioner alleges that the payments are exempt from U.S. taxation pursuant to the U.S.-Israel Income Tax Treaty because they constitute "annuities" within the meaning of paragraphs (2) and (5) of Article 20 of the treaty.

In general, "interest * * *, dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, and other fixed or determinable annual or periodical gains, profits, and income" received by a nonresident alien from sources within the United States and that are not effectively connected with a U.S. trade or business, are subject to a 30-percent tax. Sec. 871(a)(1)(A). Gambling winnings paid to a nonresident alien fall within this provision, Barba v. United States, 2 Cl. Ct. 674 (1983), with limited exceptions, see sec.

871(j).  Annual payments of State lottery winnings are treated as gambling winnings.  <u>Rusnak v. Commissioner</u>, T.C. Memo. 1987-249; see also sec. 3402(q)(3)(B)(treating certain proceeds from wagers in State-conducted lotteries as gambling winnings).[3]

The provisions of the Internal Revenue Code are applied to a taxpayer, however, "with due regard to any treaty obligation of the United States which applies to such taxpayer."  Sec. 894(a)(1).  The U.S.-Israel Income Tax Treaty, Hein's No. KAV 971, at xxii, provides:

> Article 20--Private Pensions and Annuities
>
> *     *     *     *     *     *     *
>
> (2) Alimony and annuities paid to an individual who is a resident of one of the Contracting States shall be taxable only in that Contracting State.
>
> *     *     *     *     *     *     *
>
> (5) The term "annuities", as used in this Article, means a stated sum paid periodically at stated times during life, or during a specified number of years, under an obligation to make the payments in return for adequate and full consideration (other than services rendered).

Petitioner's position is that the payments he received

---

[3] We note that whether annual payments of State lottery winnings are categorized under sec. 871(a)(1) as "annuities" (as the term is used in that section) or as "fixed or determinable annual or periodical gains, profits, and income" is immaterial in the instant case, as the tax imposed by sec. 871(a)(1) applies to either category.  As discussed hereinafter, the result in this case turns upon the meaning of "annuities" as used in the U.S.-Israel Income Tax Treaty.

during the years at issue from the California State Lottery were an "annuity" within the meaning of the treaty and therefore exempt from taxation by the United States under Article 20(2) thereof. While respondent does not dispute that petitioner was a resident of Israel, entitled as such to the benefits of the treaty, respondent nonetheless contends that the treaty provides no exemption for the payments at issue because they are not an "annuity" as defined in the treaty. Consequently, the payments are taxable under section 871(a)(1)(A) as U.S.-sourced income of a nonresident alien.[4]

To support his position that the payments constitute an annuity, petitioner relies on our decision in Estate of Gribauskas v. Commissioner, 116 T.C. 142 (2001), revd. and remanded 342 F.3d 85 (2d Cir. 2003),[5] in which we held that annual payments of a State lottery prize were an annuity for

---

[4] Petitioner has not claimed he was in the business of gambling or that the lottery winnings were effectively connected with a U.S. trade or business within the meaning of sec. 871(a)(1)(A).

[5] Although the Court of Appeals for the Second Circuit reversed our decision in Estate of Gribauskas insofar as it held that the lottery prize must be valued pursuant to the valuation tables prescribed in sec. 7520, the Court of Appeals left undisturbed our holding that the annual payments of the lottery prize constituted an annuity for purposes of sec. 7520. Estate of Gribauskas v. Commissioner, 342 F.3d 85 (2d Cir. 2003), revg. and remanding 116 T.C. 142 (2001); see also Estate of Shackleford v. United States, 262 F.3d 1028 (9th Cir. 2001)(annual payments of a lottery prize constitute an annuity, valuation of which is made outside tables prescribed by sec. 7520).

purposes of section 7520.[6]  See also <u>Estate of Cook v.</u>
<u>Commissioner</u>, T.C. Memo. 2001-170, affd. 349 F.3d 850 (5th Cir.
2003).  However, we do not believe our holding in <u>Estate of</u>
<u>Gribauskas</u> helps petitioner here.  Article 2(2) of the U.S.-
Israel Income Tax Treaty, Hein's No. KAV 971, at viii, provides
that "Any * * * term used in this Convention <u>and not defined in</u>
<u>this Convention</u> shall, unless the context otherwise requires,
have the meaning which it has under the laws of the Contracting
State whose tax is being determined."  (Emphasis added.)  As
noted, "annuities" as used in the treaty is defined in the
treaty.  The treaty definition, as pertinent here, provides that
"annuities" means a stated sum paid periodically at stated times
"under an obligation to make the payments in return for adequate
and full consideration (other than services rendered)."

In <u>Estate of Gribauskas</u>, in holding that annual payments of
a lottery prize were an "annuity" for purposes of section 7520,
we decided that it was the characteristics of the payment stream
as fixed and periodic that generally determined whether the

---

[6] Petitioner notes that in <u>Estate of Gribauskas</u>, we
described our holding as a conclusion that annual payments of
lottery winnings "constitute an annuity <u>for tax purposes</u> and
within the meaning of section 7520".  <u>Estate of Gribauskas v.</u>
<u>Commissioner</u>, 116 T.C. 142, 159 (2001)(emphasis added).  As
discussed hereinafter, our conclusion in this case is based upon
a construction of the term "annuities" as defined in the U.S.-
Israel Income Tax Treaty.  Accordingly, we express no opinion
regarding the extent to which our holding in <u>Estate of Gribauskas</u>
may impact the meaning of "annuity" as used elsewhere in the
Internal Revenue Code.

arrangement was an annuity. One of the arguments advanced by the taxpayer was that the annual payments of the lottery prize could not constitute an annuity because the consideration provided was only the $1 paid for the lottery ticket, rather than a substantial premium. Estate of Gribauskas v. Commissioner, 116 T.C. at 152. In rejecting that argument, we reasoned that while a substantial premium might be characteristic of a commercial annuity, it need not be present in a private annuity, an arrangement that we concluded also fell within the scope of the term "annuity" as used in section 7520. Id. at 154-155. Thus, the nature of the consideration provided was not determinative of whether an arrangement constituted an annuity for purposes of section 7520.

By contrast, the definition of "annuities" provided in the U.S.-Israel Income Tax Treaty requires that the obligation to make the payments have arisen "in return for adequate and full consideration". Consequently, the fact that the payments at issue in this case may qualify as an annuity for purposes of section 7520 under the holding in Estate of Gribauskas does not determine whether they constitute an annuity under the U.S.-Israel Income Tax Treaty. The latter depends upon whether the payments were made "in return for adequate and full consideration" within the meaning of Article 20(5) of the treaty.

The term "adequate and full consideration" is not defined in

the treaty.  Thus, pursuant to Article 2(2) of the treaty, the term "shall, unless the context otherwise requires, have the meaning which it has under the laws of the Contracting State whose tax is being determined"; here, the United States.

The term "adequate and full consideration" appears extensively in the Internal Revenue Code, generally followed by the phrase "in money or money's worth",[7] in a multitude of contexts.[8]  The term is generally used to connote a purchase or exchange of property that is bona fide and at an arm's-length price, as distinguished from a gift or other transfer of property between persons who do not transact at arm's length.  A definition of "adequate and full consideration" appearing in the regulations under section 6323, concerning the validity and priority of tax liens, provides that "adequate and full consideration" means consideration that has a "reasonable relationship to the true value of the interest in property

---

[7] The meaning of the phrase "in money or money's worth", when it follows "adequate and full consideration", has been interpreted to confine the scope of "consideration" to money or its equivalent; i.e., to exclude a mere promise or agreement as consideration.  See, e.g., Commissioner v. Wemyss, 324 U.S. 303 (1945).  Since the only consideration that petitioner claims is "adequate and full consideration" in this case is money, we do not believe the absence of the "in money or money's worth" qualifier in the treaty language has any material effect on the analysis herein.

[8] See, e.g., secs. 274(e)(8), 675(1), 2035(d), 2036(a), 2037(a), 2038(a), 2040(a), 2043(a), 2043(b), 2053(c)(1)(A), 2055(e)(2), 2056(b)(1)(A), 2106(a)(1), 2512(b), 2522(c)(2), 2523(b)(1), 6019(3)(A)(ii), 6323(h)(6).

acquired."  Sec. 301.6323(h)-1(f)(3), Proced. & Admin. Regs.; see also Estate of Frothingham v. Commissioner, 60 T.C. 211, 215 (1973)(for estate tax purposes, "adequate and full consideration in money or money's worth" generally means consideration of "equivalent amount" to the property transferred for it).

Petitioner contends that the consideration element of the treaty definition has been met here by virtue of the fact that the California State Lottery received "adequate and full consideration" for the payments made to petitioner from all purchasers of tickets for the lottery he won.  According to petitioner, the terms of the treaty do not require that the recipient of the lottery payments be the source of the consideration; rather, it is sufficient if the payor (California State Lottery) received adequate and full consideration from any source--in this case, the other purchasers of lottery tickets.

We do not believe petitioner's theory comports with the language of the treaty.  The California State Lottery's "obligation" to make the payments at issue was not "in return for" any consideration provided by the nonwinning purchasers of lottery tickets.  The consideration provided by these purchasers was in return for, and fully expended for, a chance to win the lottery; i.e., a wager.  Cf. Goldman v. Commissioner, 46 T.C. 136, 139 (1966)(purchase price of a lottery ticket is consideration expended for chance to win, not a contribution to

the sponsoring charity), affd. 388 F.2d 476 (6th Cir. 1967).  The other purchasers of tickets in the lottery won by petitioner did not provide consideration "in return for" the California State Lottery's obligation to make the subject payments to petitioner.

Petitioner argues in the alternative that, if the treaty is construed to require that "adequate and full consideration" come from the recipient of the lottery payments, then he provided such consideration because he paid the full, undiscounted price for the winning lottery ticket; namely, $1.  We disagree. Petitioner's contention mischaracterizes the transaction which gave rise to his right to the lottery payments.  The $1 paid by petitioner was not "adequate and full consideration" for the right to 20 annual payments of $722,000.  One dollar bears no "reasonable relationship" to the value of such a right, nor was the right transferred to him "in return for" the $1 of consideration he provided.  The $1 paid by petitioner was the consideration for the ticket itself; i.e., for the wager.  This $1 consideration was fully expended for, and secured only, a <u>chance</u> to win the right to the payments at issue herein.[9]  Cf.

---

[9] The conclusion that the $1 consideration was expended for the wager itself is consistent with the definition of "wager" for purposes of sec. 3402(q), governing withholding from certain gambling winnings, including those from State-conducted lotteries, that are "proceeds from a wager".  The regulations under that section provide that, in order for a transaction, in which a chance to win a prize is acquired, to be treated as a wager, consideration must have been provided to obtain such
(continued...)

Goldman v. Commissioner, supra.  Petitioner became entitled to the stream of payments not by reason of any exchange of consideration, but by virtue of winning a wager, a separate taxable event under U.S. tax law constituting an accession to wealth.  See, e.g., McClanahan v. United States, 292 F.2d 630, 631-632 (5th Cir. 1961); Solomon v. Commissioner, 25 T.C. 936, 938-939 (1956); Lutz v. Commissioner, T.C. Memo. 2002-89; Lyszkowski v. Commissioner, T.C. Memo. 1995-235, affd. without published opinion 79 F.3d 1138 (3d Cir. 1996).  Thus, the payments petitioner received from the California State Lottery were neither "in return for" the $1 consideration he cites, nor was this consideration "adequate and full" with respect to those payments.  The payments were the proceeds of a winning wager; i.e., gambling winnings.

Petitioner also relies upon Estate of Shackleford v. United States, 82 AFTR 2d 98-5538, 98-2 USTC par. 60,320 (E.D. Cal. 1998), affd. 262 F.3d 1028 (9th Cir. 2001), to support his claim that the $1 purchase price of the lottery ticket was adequate and full consideration for the lottery payments.  In that case, a decedent lottery winner's estate argued that the decedent's right to California lottery payments, if deemed an annuity, should not be included in the gross estate by virtue of section 2039(b).

---

⁹(...continued)
chance.  See sec. 31.3402(q)-1(d), Example (10), Employment Tax Regs.

Section 2039(b) limits the inclusion in the gross estate of the value of certain annuities to "only such part of the value of the annuity * * * as is proportionate to that part of the purchase price therefor contributed by the decedent."  Accordingly, the estate argued, since the decedent had provided only $1 towards the purchase price of the annuity represented by the lottery payments, which was an infinitesimal percentage of the purchase price contributed by the other purchasers of tickets in the same lottery, the portion of the annuity includible in the gross estate should be zero.  The District Court rejected this argument, concluding that no portion of the annuity qualified for exclusion under section 2039(b) because the interest in the lottery payments "represents the accumulated wealth of the decedent."  Estate of Shackleford v. United States, 82 AFTR 2d at 98-5542, 98-2 USTC par. 60320 at 86,530.  Consequently, the entire annuity was includible in the gross estate.

Petitioner here reasons that, since the District Court in Estate of Shackleford rejected the argument that a $1 lottery ticket constituted only "part of the purchase price" (within the meaning of section 2039(b)) of the annuity resulting from the lottery win, and instead required that the entire annuity be included in the gross estate, it follows that the decedent's $1 payment for the lottery ticket constituted the entire purchase price for the annuity.  Thus, petitioner reasons, if the $1 price

of the lottery ticket was the entire purchase price of the resulting annuity for purposes of section 2039(b), it must by extension also constitute "adequate and full consideration" for the annuity.

Petitioner's reliance on Estate of Shackleford is misplaced. The District Court therein did not conclude that the entire annuity was includible in the gross estate because the annuity was acquired solely through decedent's purchase of a $1 lottery ticket. Instead, the court reasoned that full inclusion was required because the taxpayer had not shown that any part of the lottery payments was "'attributable to contributions by the surviving beneficiary or contributions from another as a gift.'" Estate of Shackleford v. United States, 82 AFTR 2d at 98-5542, 98-2 USTC at 86,530 (quoting Neely v. United States, 222 Ct. Cl. 250, 613 F.2d 802 (1980)). The District Court's conclusion that the annuity "represents the accumulated wealth of the decedent", id., comports with our view that the obligation to pay out lottery winnings arises from the lottery participant's winning a wager, not from his providing adequate and full consideration.

We therefore hold that the payments petitioner received from the California State Lottery were not an annuity within the meaning of the U.S.-Israel Income Tax Treaty because the payments did not arise from the exchange of adequate and full consideration; rather, they were the result of winning a wager.

Thus, the sums were not paid "under an obligation to make the payments in return for adequate and full consideration" (emphasis added) within the meaning of Article 20(5) of the treaty.

As the treaty is silent with respect to gambling winnings, and petitioner has failed to establish that the payments at issue were an "annuity" within the treaty's meaning, the treaty does not prevent the United States from imposing a tax under section 871(a)(1)(A) upon such payments.  Accordingly, respondent is entitled to judgment as a matter of law.  We shall therefore grant respondent's cross-motion for summary judgment and deny petitioner's motion.  To reflect the foregoing,

An appropriate order and decision will be entered.