[No. B179146. Second Dist., Div. Seven. Jan. 17, 2006.]

ROBERT TORRES, Plaintiff, Cross-defendant and Appellant, v.
ALBERT A. TORRES, Defendant, Cross-defendant and Respondent;
TAKAKO TORRES, Defendant, Cross-complainant and Respondent.

**COUNSEL**

Alfred A. Calabro for Plaintiff, Cross-defendant and Appellant.

No appearance for Defendant, Cross-defendant and Respondent.

Stephen Shepard for Defendant, Cross-complainant and Respondent.

OPINION

**JOHNSON, J.**—In this case we hold a valid power of attorney may be created even though in using the statutory form the principal places an X instead of her initials next to the line conferring the powers.

## FACTS AND PROCEEDINGS BELOW

The facts are undisputed.

Josephine Torres executed two documents on the same day. The first document was a will leaving her estate to her nephews Albert A. and Raymond Torres. The second document was a power of attorney on the form set out in Probate Code section 4401.[1] The power of attorney named Albert and Raymond her attorneys-in-fact and purported to grant them, or either of them acting alone, "all of the powers listed above"—that is, all the powers enumerated on the statutory form including the power to buy and sell real estate and engage in estate, trust and other beneficiary transactions for Josephine.

Although the statutory form states in large capital letters "TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF [line] (N)" Josephine placed an X in front of line (N) instead of her initials.

The following year Albert executed a quitclaim deed on Josephine's behalf deeding her home to him, his brother Raymond and herself as joint tenants. Albert subsequently deeded his interest in the property to the Torres Family Trust.

In July 2000 Josephine's great-nephew Robert Torres moved in with her and cared for her until her death in September 2001.

In March 2001, six months before her death, Josephine executed a quitclaim deed conveying her interest in her home to herself and Robert as joint tenants.

Following Josephine's death Robert brought this action against Albert, Raymond's widow Takako Torres, and the Torres Family Trust to quiet title to Josephine's home, to cancel the quitclaim deed executed by Albert as Josephine's attorney-in-fact and to cancel Raymond's deed transferring his interest in the property to his trust. Robert based his action on the theory

---

[1] All statutory references are to the Probate Code.

that Josephine's purported power of attorney was invalid because she placed an X instead of her initials next to the line conferring the powers. Raymond's widow Takako filed a cross-complaint against Robert and Albert alleging she is the beneficial owner of Raymond's one-third interest in the property and seeking its partition by sale.

The case was tried to the court. As the parties agreed, if Josephine's power of attorney is invalid then Albert's subsequent conveyance of the property to himself, Raymond and Josephine is also invalid. If that conveyance is invalid then Josephine held a 100 percent interest in her home when she deeded it to Robert and herself as joint tenants. As the surviving joint tenant Robert owns a 100 percent interest in the property and neither Albert, Takako or the Torres Family Trust has any interest. On the other hand, if Josephine's power of attorney is valid then Albert's conveyance of the property to himself, Raymond and Josephine is also valid. Therefore Josephine's deed to Robert only conveyed her one-third interest in the property.

After reviewing the form signed by Josephine and hearing testimony from witnesses to its preparation and execution the trial court granted judgment to Albert and Takako in Robert's action to quiet title and cancel the deeds and to Takako on her cross-complaint against Robert and Albert for partition and sale of the property. The court stated it found no evidence Josephine was not competent when she executed the power of attorney form or that her signature was procured by fraud or undue influence. Furthermore, the court stated, the deed signed by Albert under the power of attorney which conveyed Josephine's property to herself, Raymond and Albert "appears to be in accordance with Josephine's wishes as evidenced by her bequests to Albert and Raymond in her last will and testament." The trial court reasoned Josephine's use of an X instead of her initials to indicate the powers she was granting did not invalidate the instrument because it substantially complied with the requirements of section 4401 and was in accordance with her wishes as revealed by the testimony at trial.

Robert filed a timely notice of appeal. We affirm but on grounds slightly different from those of the trial court.

## DISCUSSION

### I. A VALID POWER OF ATTORNEY WAS CREATED EVEN THOUGH IN USING THE STATUTORY FORM JOSEPHINE PLACED AN X INSTEAD OF HER INITIALS ON THE LINE CONFERRING THE POWERS.

Although California's statutory form power of attorney uses language adopted from the Uniform Statutory Form Power of Attorney Act, including the initialing requirement, neither the comments of the committee which drafted the uniform act, the California Law Revision Commission which proposed its adoption, nor any case we have found shed any light on why the form specifies the use of initials instead of some other indication of the principal's intent.[2]

Robert offers four reasons why Josephine's failure to follow the instructions on the statutory form invalidated her attempt to confer powers of attorney on Albert and Raymond.

■ In adopting a statutory power of attorney form the Legislature specified the person completing the form was to use her *initials* to indicate the specific powers granted to her attorney-in-fact. If the Legislature had intended some indication other than initials to be satisfactory it easily could have said so. For example the Legislature could have instructed the principal to "mark" the line conferring the power so an X, a check, a happy-face or any other symbol would be sufficient to confer the power. Moreover, in section 4402, subdivision (a) the Legislature specifically permitted certain deviations in wording from the statutory form but it did not include among those deviations the substitution of some other mark for the principal's initials.[3]

Josephine's form does not comply substantially with the statutory form. Section 4402 provides a statutory form power of attorney under section 4401 is "legally sufficient" if "(a) The wording on the form complies substantially with section 4401 . . . . [¶] (b) The form is properly completed. [¶] (c) The signature of the principal is acknowledged." Here, the form was not "properly completed" because it had an X instead of Josephine's initials on the line purporting to grant powers to an attorney-in-fact.

---

[2] See 24 California Law Revision Commission Report, Recommendations, Studies (1994) 1995 Comprehensive Power of Attorney Law, comment at page 423 (hereafter Report).

[3] Section 4402, subdivision (a) states a form does not fail to comply substantially with section 4401 merely because the form does not include the provisions of section 4401 relating to the designation of co-agents and revocation of powers.

The rule requiring the principal to initial the lines conferring powers on an attorney-in-fact is not just some formalistic dogma from a bygone era. The form states in bold capital letters: "THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING." Thus it is important the person conferring these "broad and sweeping" powers do so knowingly and intelligently. Requiring the principal to initial the document protects the principal in two important ways. The use of initials tends to prevent fraud because a handwriting expert may be able to detect forged initials, while it would be very difficult to determine whether the principal made the X. In addition, requiring the principal to initial the document provides a certain gravitas to the occasion and encourages the principal to give some thought to the power she is granting.

And last, the fact the principal used an X when instructed to use her initials casts doubt on the principal's ability to read and understand simple English. This in turn casts doubt on her ability to read and understand the powers she is granting through the statutory form.

█ We agree with Robert's contention Josephine's form does not comply substantially with the statutory form.[4] Even if "the wording on the form" could be interpreted to mean not just the language printed on the form but something the principal added to the form we cannot reasonably interpret an X as substantially similar to Josephine's initials, J.T. Therefore we conclude the form is not "properly completed" as required by section 4402, subdivision (b).

This conclusion, however, does not require us to reverse the judgment. The issue is not whether Josephine's form complies substantially with the statutory form but whether it complies substantially with the laws of California governing the creation of a power of attorney. We conclude it does.

The Uniform Law Commissioners state the statutory power of attorney form was created as a "handy" form with "ready-made statutory language for the creation of a power of attorney."[5] "All that anybody has to do," the commissioners explain, "is to appropriate that language into a document, fill in the blanks for designation of such things as name of principal and agent, and execute the form with signatures and a notarial attestation."[6] Nevertheless, in recommending the form's adoption the Law Revision Commission made clear the form was not intended to be the exclusive means of creating a power of attorney in California. The commission noted, "[t]he statutory form

---

[4] See section 4402, subdivision (a) discussed *ante.*

[5] Uniform Law Commissioners (2002) Summary, Uniform Statutory Form Power of Attorney Act at page 1. (Hereafter Summary.)

[6] Summary at page 1.

can be used in whole or part instead of individually drafted forms or forms adopted from a form book."[7] Furthermore, the commission explained, the adoption of the form was not an attempt "to provide an exclusive method of creating a power of attorney. Other forms may be used and other law employed to create powers of attorney."[8] The commission's view is confirmed by section 4408, adopted at the same time as section 4401.[9] Section 4408 states: "Nothing in this part affects or limits the use of any other form for a power of attorney. A form that complies with the requirements of any law other than the provisions of this part may be used instead of the form set forth in section 4401, and none of the provisions of this part apply if the other form is used."[10]

As defendants correctly point out, the basic requirements for a power of attorney are contained in part 2 of division 4.5 of the Probate Code (§§ 4100–4310).

Section 4121 provides in relevant part: "A power of attorney is legally sufficient if all of the following requirements are satisfied: [¶] (a) The power of attorney contains the date of its execution. [¶] (b) The power of attorney is signed . . . by the principal . . . [¶] (c) The power of attorney is . . . acknowledged before a notary public . . . ." Josephine's power of attorney meets these requirements. It is dated, bears her signature and was acknowledged before a notary public.

In addition, section 4123, subdivision (a) states: "In a power of attorney under this division, a principal may grant authority to an attorney-in-fact to act on the principal's behalf with respect to all lawful subjects and purposes or with respect to one or more express subjects or purposes. The attorney-in-fact may be granted authority with regard to the principal's property, personal care, or any other matter." Section 4123 does not require the principal to use her initials to designate the powers she is granting, any meaningful expression of the principal's intent will suffice. An X next to a sentence granting all of the powers listed *ante* it is a clear expression of the principal's intent.

The foregoing provisions address concerns about fraud and undue influence in several ways. Requiring the date of execution permits a court to determine whether the principal had the capacity to execute the power and also aids in

---

[7] Report at page 423.

[8] Report at page 426.

[9] Statutes 1994, chapter 307, section 16, page 1983.

[10] The part referred to is part 3 of division 4.5 of the Probate Code (§§ 4400–4465) pertaining to the statutory power of attorney.

determining which is the later of two conflicting powers of attorney.[11] The requirement the power of attorney be in writing and acknowledged before a notary or two witnesses "is intended to provide a protective level of formality" to the execution of the document.[12]

Finally, there is no evidence in this case of fraud or undue influence or that Josephine did not understand the nature of the powers she was granting to Albert and Raymond. The trial court found the conveyance of full powers to Albert and Raymond was consistent with Josephine's wishes as expressed in the will she executed the same day in which she left Albert and Raymond her entire estate. "They were her nephews," the court observed, "and, according to the testimony, loved by her during her life." Moreover the fact only the last, all-inclusive line is marked is persuasive evidence the form was not altered after Josephine marked it. If other lines conferring specific powers had been initialed or also marked with an X then the X on the all-inclusive line would be highly suspect. But here the fact only one line bears a mark virtually guarantees the mark was made by Josephine and that it expresses her intent. If no line had been marked the document would have had no purpose and no legal effect. It seems highly unlikely Josephine intended to sign a document which lacked purpose and legal effect. Rather, it is highly likely the single line marked with an X which was required to give the act of signing any meaning was placed there by Josephine before she signed the document.

## II. THE QUITCLAIM DEED TO ALBERT, RAYMOND AND JOSEPHINE WAS NOT INVALID UNDER SECTION 4264.

Robert argues for the first time on appeal the 1997 quitclaim deed executed by Albert which conveyed Josephine's property to himself, Albert and Josephine as joint tenants was invalid under section 4264, subdivision (c). That provision states an attorney-in-fact may not "[m]ake . . . a gift of the principal's property in trust or otherwise" unless expressly authorized to do so in the power of attorney. Josephine's power of attorney does not authorize Albert to make a gift of her property.

As the party seeking to invalidate the deed Robert had the burden of producing evidence the conveyance was a gift.[13] Having failed to introduce any evidence of lack of consideration Robert cannot properly complain on appeal "there is no evidence that Albert's conveyance of one-third interests in Josephine's property [was] supported by any consideration."

---

[11] Report at page 337.

[12] Report at pages 337–338.

[13] See *Estate of Huston* (1997) 51 Cal.App.4th 1721, 1727 [60 Cal.Rptr.2d 217].

## DISPOSITION

The judgment is affirmed.

Perluss, P. J., and Woods, J., concurred.

A petition for a rehearing was denied February 9, 2006, and appellant's petition for review by the Supreme Court was denied April 12, 2006, S141457. Werdegar, J., did not participate therien.