148 T.C. No. 18

UNITED STATES TAX COURT

ESTATE OF NANCY H. POWELL, DECEASED, JEFFREY J. POWELL, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 24703-12, 24731-12.[1]           Filed May 18, 2017.

On August 8, 2008, D's son, J, acting on her behalf, transferred cash and securities to LP, a limited partnership, in exchange for a 99% limited partner interest.  LP's partnership agreement allowed for the entity's dissolution with the written consent of all partners.  Also on August 8, 2008, J, purportedly acting under a power of attorney, transferred D's LP interest to T, a charitable lead annuity trust, the terms of which provided an annuity to a charitable organization for the rest of D's life.  Upon D's death, T's corpus was to be divided equally between D's two sons.  D died on August 15, 2008.

Held:  D's ability, acting with LP's other partners, to dissolve the partnership was a right "to designate the persons who shall

_____

[1]We consolidated the cases at docket Nos. 24703-12 and 24731-12 for trial, briefing, and opinion.

possess or enjoy" the cash and securities transferred to LP "or the income therefrom", within the meaning of I.R.C. sec. 2036(a)(2).

Held, further, because D's LP interest was transferred, if at all, less than three years before her death, the value of the cash and securities transferred to LP is includible in the value of her gross estate to the extent required by either I.R.C. sec. 2036(a)(2) or I.R.C. sec. 2035(a).

Held, further, neither I.R.C. sec. 2036(a)(2) nor I.R.C. sec. 2035(a) (whichever applies) requires inclusion in the value of D's gross estate of the full date-of-death value of the cash and securities transferred to LP; only the excess of that value over the value of the limited partner interest D received in return is includible in the value of D's gross estate. I.R.C. sec. 2043(a).

Held, further, J's transfer of D's LP interest to T was either void or revocable under applicable State law because D's power of attorney did not authorize J to make gifts in excess of the annual Federal gift tax exclusion; consequently, the value of the 99% limited partner interest in LP, as of the date of D's death, is includible in the value of her gross estate under I.R.C. sec. 2033 or I.R.C. sec. 2038(a).

David B. Shiner, for petitioner.

Gorica B. Lakic and Alexander R. Roche, for respondent.

OPINION

HALPERN, Judge: By separate notices of deficiency, respondent determined a deficiency of $5,870,226 in the Federal estate tax of the Estate of

Nancy H. Powell (decedent) and a deficiency of $2,961,366 in decedent's Federal gift tax for 2008. The estate has moved for summary judgment in its favor that there is no deficiency in either estate or gift tax. Respondent has moved for partial summary judgment in his favor that (1) the value of cash and securities transferred from decedent's revocable trust to NHP Enterprises LP (NHP), a limited partnership, in exchange for a 99% limited partner interest is includible in the value of decedent's gross estate under section 2038(a);[2] (2) the value of those same assets is includible in the value of her gross estate under either paragraph (1) or (2) of section 2036(a); and (3) the value of the limited partner interest in NHP decedent received is includible in the value of her gross estate because her son, Jeffrey Powell, did not have the authority to transfer that interest to a charitable lead annuity trust (CLAT) before decedent's death. The estate tax notice of deficiency characterizes those three claims as alternative grounds for increasing the value of decedent's gross estate by $10,022,570, which respondent apparently determined to be the value, as of the date of decedent's death, of the cash and securities transferred to NHP. By contrast, respondent's motion does not explicitly

---

[2]Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

identify the three grounds on which he seeks partial summary judgment as alternatives to each other.

We will grant respondent's motion for partial summary judgment that the transfer of cash and securities to NHP was subject to a retained right "to designate the persons who shall possess or enjoy" those assets "or the income therefrom", within the meaning of section 2036(a)(2), and that the purported transfer to the CLAT of the 99% limited partner interest that decedent received for those assets was either void or revocable. Because the purported transfer of decedent's NHP interest to the CLAT, if valid, occurred within three years of decedent's death, the date-of-death value of the cash and securities transferred to NHP is includible in the value of decedent's gross estate to the extent required by either section 2036(a)(2) or section 2035(a). Our conclusion that either section 2036(a) or section 2035(a) applies to the cash and securities renders moot the question of whether enjoyment of those assets was subject to change at the date of decedent's death through the exercise of a power described in section 2038(a). Our granting of respondent's motion on the grounds indicated requires that we deny the estate's motion for summary judgment in regard to the estate tax deficiency but grant its motion in regard to the gift tax deficiency. Our disposition of the parties' motions resolves or renders moot the legal issues raised by the determined deficiencies and

leaves no material contested questions of fact, thereby obviating the need for a trial. We round all dollar amounts to the nearest dollar.

## Background

Decedent died on August 15, 2008, at Marin General Hospital in Greenbrae, California. When the petitions were filed in these cases, Mr. Powell, executor of decedent's estate, resided in California.

## Transfer of Cash and Securities to NHP

On August 8, 2008, cash and securities were transferred from decedent's revocable trust to NHP in exchange for a 99% limited partner interest. By stipulation, the parties agree on the date of the transfer. They also agree that, on that date, the transferred assets were worth $10,000,752. The stipulated value appears on a statement of NHP's account with Polaris Equity Management, Inc. (Polaris), the wealth management firm Mr. Powell founded, as the balance of that account as of August 8, 2008.

NHP had been formed two days earlier, on August 6, 2008, when Mr. Powell, as general partner, executed and filed with the Delaware secretary of state a certificate of limited partnership. NHP's limited partnership agreement gives Mr. Powell, as general partner, sole discretion to determine the amount and timing of

partnership distributions. That agreement also allows for the partnership's dissolution with the written consent of all partners.

Purported Gift of Decedent's Limited Partner Interest in NHP

On August 8, 2008, Mr. Powell, purportedly acting on behalf of decedent under a power of attorney (POA), assigned to the CLAT decedent's 99% limited partner interest in NHP. Decedent's POA authorized Mr. Powell to take specified actions on her behalf in the event of her incapacitation. In a letter dated August 7, 2008, two doctors at Marin General Hospital expressed their opinion that decedent was incapacitated and could not act on her own behalf.

The terms of the CLAT entitled the Nancy H. Powell Foundation, a Delaware nonprofit corporation, to an annuity of a specified amount for the remainder of decedent's life. Upon decedent's death, the remaining assets in the CLAT were to be divided equally between two trusts for the benefit of Mr. Powell and his brother.

Mr. Powell's Authority Under the POA

The powers granted to Mr. Powell by the POA included the ability "[t]o grant, convey, sell, transfer, mortgage deed in trust, pledge and otherwise deal in all property real and personal, which the principal may own". The POA also authorized Mr. Powell "[t]o make gifts on the principal's behalf, including, but not

limited to, forgiveness of loans, to a class composed of the principal's children, any of such children's issue, or any or all to the full extent of the federal annual gift tax exclusion under Internal Revenue Code Section 2503(b) or any successor statute." A ratification provision in the POA states: "The principal hereby ratifies and confirms all that the agent shall do, or cause to be done, by virtue of this power of attorney."

Decedent's 2008 Gift Tax Return

Decedent's gift tax return for 2008 reported a taxable gift of $1,661,422 as a result of the purported transfer to the CLAT of her 99% limited partner interest in NHP. The amount of the taxable gift--that is, the remainder interest in the CLAT given to decedent's sons--was computed on the basis that the trust corpus (the 99% limited partner interest in NHP) was worth $7,516,773. The value assigned to the limited partner interest, in turn, was based on an appraisal conducted by Duff & Phelps, LLC. In determining the value of the limited partner interest, Duff & Phelps applied a 25% discount for lack of control and lack of marketability. Duff & Phelps attached as an exhibit to its appraisal a statement of NHP's Polaris account as of August 8, 2008, which shows a balance of $10,022,570.[3]

---

[3]The record includes two different statements of NHP's Polaris account as of August 8, 2008, that show slightly varying balances in that account. Respondent

(continued...)

The Notices of Deficiency

Respondent issued notices of deficiency in both estate and gift tax. In the gift tax notice, respondent determined that the 99% limited partner interest in NHP was worth $8,518,993 on August 8, 2008, and that the remainder interests in the CLAT were worth $8,363,095. Respondent determined the value of the remainder interests on the premise that decedent was terminally ill when the gift was made.

The estate tax notice increased the value of decedent's gross estate by $12,983,936. The notice explains the principal adjustment, an increase of $10,022,570, on three alternative grounds:

> It is determined that the decedent retained at her death the possession, enjoyment, or right to the income from property she transferred to NHP * * * or the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income there from such that the property transferred to the partnership valued at $10,022,570 on the valuation date is includible in the gross estate under IRC § 2036(a).

> Alternatively, it is determined that the decedent retained at her death a power to change the enjoyment of property transferred to NHP * * * through exercise of a power * * * by the decedent alone or in conjunction with any other person * * * to alter, amend, revoke, or terminate such that the property transferred to the partnership valued

---

[3](...continued)
computed his adjustments using the balance shown on the statement attached as an exhibit to the Duff & Phelps appraisal. By contrast, the value to which the parties stipulated is the lower value shown the other statement that bears the same date.

at $10,022,570 on the valuation date is includible in the gross estate under IRC § 2038(a).

Alternatively, it is determined that the decedent retained at her death a power to change the enjoyment of a 99% limited partnership interest in NHP * * * through exercise of a power * * * by the decedent alone or in conjunction with any other person * * * to alter, amend, revoke, or terminate such that the value of the 99% limited partnership interest is includible in her gross estate under IRC § 2038(a) at its fair market value of $10,022,570.  The fair market value of the 99% partnership interest is determined without regard to certain rights and restrictions identified in IRC § 2703(a).

The remaining increase to the value of decedent's estate of $2,961,366 equals the gift tax deficiency that respondent determined, which he added to the value of decedent's gross estate because the taxable gift resulting from the purported transfer to the CLAT of decedent's limited partner interest in NHP occurred within three years of her death.  See sec. 2035(b) (requiring that a decedent's gross estate be increased by gift tax paid on gifts made within three years before death). (Although respondent increased the value of decedent's gross estate by the gift tax deficiency he determined, he did not increase the amount of the deduction allowed under section 2053(a)(3) for claims against the estate.)

Discussion

I.      Background

    A.      Summary Adjudication

Summary judgment expedites litigation.  It is intended to avoid unnecessary and expensive trials.  It is not, however, a substitute for trial and should not be used to resolve genuine disputes over issues of material fact.  E.g., Vallone v. Commissioner, 88 T.C. 794, 801-805 (1987).  The moving party has the burden of showing the absence of a genuine dispute as to any material fact.  E.g., George v. Commissioner, 139 T.C. 508, 512 (2012).  For these purposes, we afford the party opposing the motion the benefit of all reasonable doubt, and we view the material submitted by both sides in the light most favorable to the opposing party.  That is, we resolve all doubts as to the existence of an issue of material fact against the movant.  E.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Dreher v. Sielaff, 636 F.2d 1141, 1143 n.4 (7th Cir. 1980); Kroh v. Commissioner, 98 T.C. 383, 390 (1992).

    B.      The Federal Estate Tax

Section 2001(a) imposes a tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States", and section 2051 defines the taxable estate as "the value of the gross estate", less applicable

deductions.  Section 2031(a) specifies that the value of the gross estate includes the values of "all property, real or personal, tangible or intangible, wherever situated", to the extent provided in sections 2033 through 2046.  Section 2033 provides:  "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death."  Sections 2035 through 2039 include in the value of a decedent's gross estate the value of property the decedent transferred during his life when specified conditions are met.  For example, as explained in more detail below, section 2036 includes the value of transferred property in the value of a decedent's gross estate if, after the transfer, the decedent retained for life the right to the income from the property or the right to designate the beneficiary of the property or the income therefrom.  Section 2038 includes the value of transferred property in the value of a decedent's gross estate if the decedent retained at death the right to alter, amend, revoke, or terminate the transferee's enjoyment of the property.

II.     Applicability of Section 2036(a) or Section 2035(a) to Transfer to NHP

        A.      Respondent's Argument

Respondent argues that section 2036(a)(1) and (2) applies to decedent's transfer of cash and securities to NHP.  Section 2036(a) provides:

## SEC. 2036.  TRANSFERS WITH RETAINED LIFE ESTATE.

(a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), * * * under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death--

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

Respondent argues that section 2036(a)(1) applies to the transfer in issue because it was subject to an implied agreement under which decedent retained the possession or enjoyment of the transferred property or the right to income from that property.  Respondent also argues that section 2036(a)(2) applies to the transfer because of decedent's ability, acting with her sons, to dissolve NHP and thereby designate those who would possess the transferred property or the income from the property.  Respondent claims that the bona fide sale exception to section 2036(a) does not apply because the estate failed to demonstrate a significant nontax purpose for the creation of NHP and because, in the light of the claimed valuation discount, the transfer was not made for full and adequate consideration.

See Estate of Bongard v. Commissioner, 124 T.C. 95, 118 (2005) (holding that "the bona fide sale for adequate and full consideration exception" applies to a transfer to a family limited partnership only when "the record establishes the existence of a legitimate and significant nontax reason for creating the family limited partnership"). Because we agree with respondent that the transfer of cash and securities to NHP was subject to a right described in section 2036(a)(2), we need not consider respondent's argument regarding section 2036(a)(1).[4]

B.    Estate's Response

The estate does not deny that decedent's ability to dissolve NHP with the consent of her sons constituted a "right * * * in conjunction with * * * [others], to designate the persons who shall possess or enjoy the property [she transferred to the partnership] or the income therefrom", within the meaning of section 2036(a)(2). Nor does the estate challenge respondent's assertion that decedent's transfer of cash and securities to the partnership was "not a bona fide sale for an

_____

[4]Because we express no view on whether the transfer of decedent's cash and securities to NHP was subject to a right described in sec. 2036(a)(1) (or whether enjoyment of those assets was subject to change on the date of decedent's death through the exercise of a power described in sec. 2038(a)), it does not follow that, had NHP's limited partnership agreement been drafted in a way that prevented the application of sec. 2036(a)(2), decedent's gross estate would have been reduced by any discount applicable in valuing the limited partner interest issued in exchange for those assets.

adequate and full consideration in money or money's worth". The estate's only response to respondent's section 2036(a)(2) argument is that, upon her death, decedent did not retain her interest in NHP. The estate apparently reasons that, even if decedent's interest in NHP gave her the right to designate the beneficiaries of the assets she transferred to the partnership, she did not retain that right for the remainder of her life (and the brief period for which she held the right was not ascertainable only by reference to her death). Consequently, the estate argues, section 2036(a)(2) does not apply to decedent's transfer of cash and securities to NHP.

C.    Analysis

The estate's argument against the inclusion in the value of decedent's gross estate of any portion of the value of the cash and securities she transferred to NHP is unavailing for two reasons. First, the argument assumes the validity of the transfer to the CLAT of decedent's 99% limited partner interest in NHP. As explained in part IV.C. below, we conclude that, under California law, the gift was either void or revocable because Mr. Powell did not have authority under the POA to make gifts in excess of the annual Federal gift tax exclusion provided in section 2503(b). Moreover, even if the estate were correct that Mr. Powell transferred decedent's NHP interest to the CLAT, because that transfer occurred less than

- 15 -

three years before decedent's death, it would not exclude the value of the cash and

securities transferred to the partnership from the value of decedent's gross estate.

In claiming otherwise, the estate overlooks section 2035(a).

Section 2035(a) provides:

SEC. 2035.  ADJUSTMENTS FOR CERTAIN GIFTS MADE
            WITHIN 3 YEARS OF DECEDENT'S DEATH.

(a) Inclusion of Certain Property in Gross Estate.--If--

(1) the decedent made a transfer * * * of an
interest in any property, or relinquished a power with
respect to any property, during the 3-year period ending
on the date of the decedent's death, and

(2) the value of such property (or an interest
therein) would have been included in the decedent's
gross estate under section 2036, 2037, 2038, or 2042 if
such transferred interest or relinquished power had been
retained by the decedent on the date of his death,

the value of the gross estate shall include the value of any property
(or interest therein) which would have been so included.

Assuming its validity, the transfer of decedent's NHP interest to the CLAT

relinquished a power over the disposition of the cash and securities transferred to

the partnership.  The transfer of her NHP interest occurred less than three years

before her death (indeed, only a week before).  The estate does not deny that, if

decedent had retained her NHP interest on the date of her death, the value of the

cash and securities transferred to the partnership would have been included in the value of her gross estate under section 2036(a)(2). Thus, even if decedent's NHP interest were validly transferred to the CLAT before her death, the plain terms of section 2035(a) would require inclusion in the value of her gross estate of the value of the cash and securities that would have been included under section 2036(a)(2) in the absence of that transfer.

Our opinion in Estate of Strangi v. Commissioner, T.C. Memo. 2003-145, 2003 WL 21166046, aff'd, 417 F.3d 468 (5th Cir. 2005), supports the conclusion that decedent's ability to dissolve NHP with the cooperation of her sons constituted a "right * * * in conjunction with * * * [others], to designate the persons who shall possess or enjoy the property [she transferred to the partnership] or the income therefrom", within the meaning of section 2036(a)(2). Estate of Strangi, like the present cases, involved a decedent who could act with others to dissolve a family limited partnership to which he had transferred property in exchange for a 99% limited partner interest. The ability to dissolve the partnership carried with it the ability to direct the disposition of its assets. In fact, because the decedent was a 99% partner in the partnership, its dissolution "would likely revest in decedent himself * * * the majority of the contributed property." Id., 2003 WL 21166046, at *15. Therefore, we concluded that the decedent's

ability to join with others to dissolve the partnership justified the application of section 2036(a)(2) to the property he transferred in exchange for his partnership interest.

The ability of the decedent in Estate of Strangi to act with others to dissolve the partnership was one of two factors that we relied on in that case to apply section 2036(a)(2). And although decedent's ability to dissolve NHP is sufficient to invoke section 2036(a)(2), the second factor we relied on in Estate of Strangi is also present here. In addition to noting the decedent's ability to act with others to dissolve the partnership, we concluded in Estate of Strangi that the decedent held the right, through his son-in-law, to determine the amount and timing of partnership distributions. The partnership agreement granted that authority to the managing general partner, a corporation owned by the decedent and other family members. The corporate general partner delegated its authority to the decedent's son-in-law in a management agreement. The son-in-law also served as the decedent's attorney-in-fact under a power of attorney. Thus, we concluded, "Decedent's attorney in fact thereby stood in a position to make distribution decisions." Id. at *9. In the present cases, NHP's limited partnership agreement gives Mr. Powell, as general partner, sole discretion to determine the amount and

timing of partnership distributions. And, as in Estate of Strangi, the person with authority to determine distributions also served as decedent's attorney-in-fact.

Applying section 2036(a)(2) in Estate of Strangi to include in the value of the decedent's gross estate the value of assets he had transferred to the family limited partnership required us to distinguish the Supreme Court's opinion in United States v. Byrum, 408 U.S. 125 (1972). For the reasons explained below, we conclude that the grounds on which we distinguished Estate of Strangi from Byrum apply equally in the present cases.

In Byrum, the Court held that a decedent's retained right to vote shares of stock in three corporations that he had transferred to a trust for the benefit of his children did not cause the value of those shares to be included in the value of his estate under section 2036(a)(2). The Court rejected the Government's argument that, through his ability to vote the transferred shares, the decedent could affect the corporations' dividend policy and thus the trust's income. Among other things, the Court noted that the decedent, as the controlling shareholder of each corporation, owed fiduciary duties to the minority shareholders that circumscribed his influence over the corporations' dividend policies.

The executor in Estate of Strangi argued that any authority the decedent in that case had, through his son-in-law, over the partnership's management was

subject to State law fiduciary duties and, therefore, was insufficient under Byrum to trigger the application of section 2036(a)(2). In response, we characterized as "illusory" any limitations imposed by fiduciary duties. Estate of Strangi v. Commissioner, 2003 WL 21166046, at *16. We observed that, before the son-in-law assumed his duties to the partnership, he had owed a duty to the decedent personally as the decedent's attorney-in-fact. We surmised that, in exercising his duties to the partnership, the son-in-law would not "disregard his preexisting obligation to decedent." Id. at *17. Because the decedent owned 99% of the partnership, any fiduciary duties that limited his authority, acting through his son-in-law, to manage the partnership were duties he owed "essentially to himself." Id. at *18. Moreover, the only owners of the partnership other than the decedent were members of his family. And the partnership, unlike the corporations involved in Byrum, did not conduct business operations. We concluded: "Intrafamily fiduciary duties within an investment vehicle simply are not equivalent in nature to the obligations created by the United States v. Byrum * * * scenario." Id.[5]

_____

[5]In considering the decedent's influence over the dividend policies of the corporations, the Supreme Court in United States v. Byrum, 408 U.S. 125, 140, 142 (1972), emphasized the constraints of "business and economic variables over which he had little or no control" and the prospect that minority stockholders unrelated to the decedent would have had a cause of action under State law had the decedent and the corporations' directors violated their fiduciary duties. Because of

(continued...)

Again, the present cases can be distinguished from <u>Byrum</u> on the same grounds. In addition to his duties as NHP's general partner, Mr. Powell owed duties to decedent that he assumed either before he created the partnership or at about the same time. Nothing in the circumstances of the present cases suggests that Mr. Powell would have exercised his responsibility as general partner of NHP in ways that would have prejudiced decedent's interests. Because decedent held a 99% interest in NHP, whatever fiduciary duties limited Mr. Powell's discretion in determining partnership distributions were duties that he owed almost exclusively to decedent herself. Finally, the record provides no indication that NHP conducted meaningful business operations or was anything other than an investment vehicle for decedent and her sons. We conclude that any fiduciary duties that limited Mr. Powell's discretion in regard to distributions by NHP were "illusory" and thus do not prevent his authority over partnership distributions from

_____

[5](...continued)
the Court's emphasis on the corporations' businesses and the presence of "a substantial number of minority stockholders * * * who were unrelated to" the decedent, <u>id.</u> at 142, <u>Byrum</u> need not be read as having established a "bright-line test" under which control rights circumscribed by fiduciary duties owed to minority owners (whether related or unrelated to the holder of the rights) prevent the rights from triggering the application of sec. 2036. <u>But see</u> Mitchell M. Gans and Jonathan G. Blattmachr, "Strangi: A Critical Analysis and Planning Suggestions", 100 Tax Notes 1153, 1156-1159 (2003).

being a right that, if retained by decedent at her death, would be described in section 2036(a)(2).

D.    Conclusion

For the reasons described above, we will grant respondent's motion for summary judgment that the transfer of cash and securities to NHP was subject to a retained right "to designate the persons who shall possess or enjoy" those assets "or the income therefrom", within the meaning of section 2036(a)(2).  As noted above, the estate does not challenge respondent's determination that that transfer was not "a bona fide sale for an adequate and full consideration".  Consequently, if decedent retained until her death her right in regard to the transferred cash and securities, the value of those assets would be includible in the value of her gross estate to the extent required by section 2036(a).  If, instead, she made a valid gift of her NHP interest before her death, and thus relinquished her retained right to the cash and securities, the value of those assets would still be includible in the value of her gross estate to the extent required by section 2035(a).

III.   The Limit Imposed by Section 2043(a) on the Amount Includible in Decedent's Gross Estate by Reason of Section 2036(a) or Section 2035(a)

In the light of our conclusion that the value of the cash and securities transferred to NHP is includible in decedent's estate to the extent required by

section 2036(a)(2) or section 2035(a), we need not address respondent's request for summary judgment that enjoyment of the cash and securities was subject to change at the date of decedent's death through the exercise of a power described in section 2038(a). If applicable, section 2038(a) would require inclusion of the value of the cash and securities to the same extent required by either section 2036(a)(2) or section 2035(a).

By contrast, our conclusion regarding the applicability of section 2036(a)(2) or section 2035(a) does not render moot the question raised by respondent third's claim, regarding the validity of the gift of decedent's 99% limited partner interest in NHP. Contrary to the characterization of respondent's three claims in the estate tax notice of deficiency, they are not all alternative grounds for reaching the same result.

The inclusion in decedent's gross estate required by section 2036(a)(2) (or, if applicable, section 2035(a)) differs in amount from the inclusion that would be required by a determination that the gift of decedent's NHP interest was either void or revocable. Neither section 2036(a)(2) nor section 2035(a) justifies the inclusion in the value of decedent's gross estate of the full date-of-death value of the cash and securities transferred to NHP in exchange for decedent's limited partner interest. Although the terms of each section, read in isolation, would require that

result, those sections must be read in conjunction with section 2043(a), which provides:

SEC. 2043.  TRANSFERS FOR INSUFFICIENT CONSIDERATION

(a) In General.--If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive * * * is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent.

A.      The Purpose of Section 2043(a)

Section 2043(a) complements the bona fide sale exception to the inclusionary rules provided in sections 2035 through 2038.  The bona fide sale exception limits the reach of the inclusionary rules to transactions that deplete a decedent's estate.  E.g., Estate of Magnin v. Commissioner, 184 F.3d 1074, 1079 (9th Cir. 1999) ("[T]he purpose underlying * * * section [2036(a)] is to prevent the depletion of the decedent's gross estate."), rev'g T.C. Memo. 1996-25; Estate of D'Ambrosio v. Commissioner, 105 T.C. 252, 260 (1995) ("The bona fide sale exception applies when an interest in property is transferred for sufficient consideration to prevent the depletion of the transferor's gross estate for Federal estate tax purposes."), rev'd, 101 F.3d 309 (3d Cir. 1996).

Section 2043(a) serves a purpose similar to that of the bona fide sale exception, limiting the scope of the various inclusionary rules so that they apply only to the extent necessary to prevent depletion of the transferor's estate.  The rule now embodied in section 2043(a) first appeared in the Revenue Act of 1926, ch. 27, sec. 302(i), 44 Stat. at 71.  Because section 302(i) of the 1926 Act was added in conference, H.R. Conf. Rept. No. 69-356, at 9-10 (1926), the reports on the 1926 Act of the House Ways and Means Committee and the Senate Finance Committee do not address that provision.  See H.R. Rept. No. 69-1 (1925), 1939-1 C.B. (Part 2) 315; S. Rept. No. 69-52 (1926), 1939-1 C.B. (Part 2) 332.  "Nonetheless," as we wrote in Estate of Frothingham v. Commissioner, 60 T.C. 211, 216 (1973), "the purpose of section 302(i) is far from obscure.  It was plainly designed to deal with the situation where the decedent has received some, but not 'adequate and full,' consideration for the transfer."  When Congress enacted section 302(i) of the 1926 Act, it "was obviously attempting * * * to provide a measure of relief from double taxation of the same economic interest."  Id.

Thus, if a transfer depletes a decedent's estate to any extent, the bona fide sale exception will generally not apply.[6]  But if the decedent receives some

_____

[6]In Estate of Bongard v. Commissioner, 124 T.C. 95 (2005), we adopted a limited exception to the proposition that any depletion of a decedent's estate

(continued...)

consideration, section 2043(a) limits the required inclusion to the amount by which the transfer depletes the decedent's estate.

B.     Applicability of Section 2043(a) in the Present Cases

In the present cases, because of the limitation provided by section 2043(a), section 2036(a)(2), if applicable, would include in the value of decedent's gross estate only the excess of the fair market value at the time of her death of the cash and securities transferred to NHP over the value of the 99% limited partner interest in NHP issued in exchange for those assets.  If, instead, section 2035(a) applies, it would require inclusion in the value of decedent's gross estate of the same amount--that is, the amount that would have been included in the value of

_____

[6](...continued)
precludes application of the bona fide sale exception.  In Estate of Bongard, we held:  "In the context of family limited partnerships, the bona fide sale for adequate and full consideration exception is met where the record establishes the existence of a legitimate and significant nontax reason for creating the family limited partnership, and the transferors received partnership interests proportionate to the value of the property transferred."  Id. at 118.  Under Estate of Bongard's "proportionality" test, a transfer of assets to a family limited partnership can be treated as having been made for adequate and full consideration even if discounts for such factors as lack of control or lack of marketability cause the value of the partnership interest received by a decedent to be less than the value of the assets he transferred to the partnership.  Thus, a transfer by a decedent to a family limited partnership that depletes the decedent's estate to the extent of any applicable discounts allowed in valuing the partnership interest can satisfy the bona fide sale exception from sec. 2036(a), but only if the partnership was created for a legitimate and significant nontax reason.

decedent's gross estate under section 2036(a)(2) but for the transfer of her interest in NHP less than three years before her death. Section 2043(a) applies by its plain terms: We have concluded that the transfer of cash and securities to NHP was a transfer "enumerated and described" in either section 2036(a)(2) or section 2035(a). That transfer was made "for a consideration in money or money's worth," that is, a 99% limited partner interest in NHP. Because the estate does not challenge respondent's contention that Mr. Powell had no legitimate and significant nontax reason for creating NHP, the transfer of cash and securities to the partnership was "not a bona fide sale for an adequate and full consideration in money or money's worth", regardless of the value of the limited partner interest issued in exchange for those assets. See Estate of Bongard v. Commissioner, 124 T.C. at 118. Therefore, section 2043(a) limits the amount includible in the value of decedent's gross estate, by reason of section 2036(a)(2) (either alone or in conjunction with section 2035(a)), to "the excess of the fair market value at the time of death of * * * [the cash and securities], over the value of the consideration received therefor by the decedent." Put differently, section 2036(a)(2) or section 2035(a), in either case as limited by section 2043(a), includes in the value of decedent's gross estate the amount of any discounts applicable in valuing the 99% limited partner interest in NHP issued in exchange for the cash and securities (an

amount that could colloquially be characterized as the "hole" in the doughnut).[7]

Only if the gift to the CLAT of decedent's limited partner interest in NHP were either void or revocable (and thus subject to section 2038(a)) would the value of her gross estate also include value of that interest (the "doughnut").

Allowing section 2043(a) to limit the amount includible in the value of a decedent's gross estate by reason of the application of section 2036(a) to a transfer to a family limited partnership carries out the purposes of those provisions. To the extent that the value of assets transferred to a family limited partnership does not

_____

[7]More precisely, the net inclusion required by applying sec. 2036(a) to a transfer to a family limited partnership would equal any discounts applied in valuing the partnership interest the decedent received plus any appreciation (or less any depreciation) in the value of the transferred assets between the date of the transfer and the decedent's date of death. Changes in the value of the transferred assets would affect the required inclusion because sec. 2036(a) includes in the value of decedent's gross estate the date-of-death value of those assets while sec. 2043(a) reduces the required inclusion by the value of the partnership interest on the date of the transfer. To the extent that any post-transfer increase in the value of the transferred assets is reflected in the value of the partnership interest the decedent received in return, the appreciation in the assets would generally be subject to a duplicative transfer tax. (Conversely, a post-transfer decrease in value would generally result in a duplicative reduction in transfer tax.) In the present cases, however, the parties appear to have agreed to disregard any change in the value of the cash and securities transferred to NHP between the date of their transfer, on August 8, 2008, and decedent's death one week later. See infra note 12. Therefore, if no discount appropriately applies to value the interest in NHP issued in exchange for decedent's cash and securities, as respondent claimed in the estate tax notice of deficiency, then the application of either sec. 2036(a) or sec. 2038(a) to the transfer of those assets to NHP would add nothing to her gross estate.

exceed the value of the partnership interest received in return, the exchange does not deplete the transferor's estate or allow for the avoidance of transfer taxes. If, after formation of a family limited partnership, a decedent transfers her interest in the partnership inter vivos by gift, the value of that interest (taking into account any applicable valuation discounts) will be subject to gift tax. If the decedent instead retains her partnership interest until death, section 2033 will include the value of that interest (again, subject to applicable discounts) in the value of her gross estate. In either case, section 2036(a), as limited by section 2043(a), would bring back into the estate the amount of any discounts (that is, the doughnut holes) allowed in valuing the partnership interest. Applying section 2043(a) to limit the inclusion required by section 2036(a) simply prevents "double taxation of the same economic interest", precisely in accord with the "obvious" purpose underlying section 2043(a) and its predecessors that we discerned in Estate of Frothingham v. Commissioner, 60 T.C. at 216.

C.    Estate of Harper's "Recycling of Value" Theory

We have not previously had occasion to apply section 2043(a), in accordance with its plain terms, to limit the amount includible in the value of a decedent's gross estate by reason of the application of either section 2036(a) or section 2038(a) to a transfer to a family limited partnership. That occasion has not

heretofore arisen because, in cases in which the decedent continues to own on the date of death part or all of the partnership interest she received in exchange for the transferred assets, the Commissioner customarily includes in the value of her gross estate the value of the assets transferred inter vivos to the partnership in lieu of the value of the partnership interest that the decedent actually owned at death (which would otherwise be includible in the value of her gross estate under section 2033). The illogic of including in the value of a decedent's gross estate both the assets transferred to a family limited partnership and the partnership interest received in return seems to have been widely recognized, but the precise legal grounds that prevent such illogical "double taxation" have gone unarticulated.[8] The present cases--relatively unique in that respondent challenges the validity of the gift by

---

[8]Estate of Thompson v. Commissioner, T.C. Memo. 2002-246, 2002 WL 31151195, aff'd, 382 F.3d 367 (3d Cir. 2004), which the concurring opinion would follow, is no exception. In Estate of Thompson v. Commissioner, 2002 WL 31151195, at *18, the other partners in two family limited partnerships "did not actually pool their assets with * * * decedent", effectively keeping the partnership assets they contributed (and the resulting income) separate from the partnership assets decedent contributed. After applying sec. 2036(a)(1) to include in the decedent's gross estate the date-of-death value of assets he transferred to two family limited partnerships, we "found", relying in part on the effective "siloing" of partnership assets, "that no additional value attributable to the partnerships over the value of the property included in decedent's estate under sec. 2036(a) is included in decedent's * * * estate." Id. at *21. We cited no legal authority for the "finding" that allowed us to disregard the actual value of the partnership interests the decedent retained at death.

which decedent disposed of her interest in the family limited partnership--provide us the opportunity to fill that lacuna and explain why a double inclusion in a decedent's estate is not only illogical, it is not allowed.

In the only prior case in which we considered the impact of section 2043(a) to a transfer to a family limited partnership, Estate of Harper v. Commissioner, T.C. Memo. 2002-121, 2002 WL 992347, at *19, we suggested that a partnership interest did not qualify as "consideration", for purposes of either section 2036(a) or section 2043(a), if the formation of the partnership did not involve a genuine pooling of assets so that the value of the partnership interest issued to the decedent "derived solely" from the assets he contributed. Such cases, we reasoned, involve "nothing but a circuitous 'recycling' of value" that does not "rise to the level of a payment of consideration." Id.

While the proportion of the partnership's assets contributed to a family limited partnership by a decedent-transferor, and thus the extent of pooling involved in the partnership's formation, is relevant to the applicability of the bona fide sale exception from section 2036(a), that factor is more germane to the nontax bona fides of the transaction than to the adequacy of the partnership interest as consideration for the transferred assets. That is how the Courts of Appeals that have considered Estate of Harper's recycling of value theory have understood it.

See Estate of Bigelow v. Commissioner, 503 F.3d 955, 969 (9th Cir. 2007), aff'g T.C. Memo. 2005-65; Estate of Thompson v. Commissioner, 382 F.3d 367, 379 (3d Cir. 2004), aff'g T.C. Memo. 2002-246; Kimbell v. United States, 371 F.3d 257, 267 (5th Cir. 2004). We agree with and accept that interpretation. Thus, we conclude that the proportion of partnership assets contributed by a decedent-transferor to a family limited partnership does not affect the treatment of the partnership interest issued in return as consideration for the transferred assets for purposes of section 2036(a) or section 2043(a).

We and other courts have interpreted the bona fide sale exception to consist of two separate prongs. To satisfy the exception, an estate must establish both the nontax bona fides of the transaction and the existence of full and adequate consideration. Estate of Bigelow v. Commissioner, 503 F.3d at 969 (recognizing the adequacy of consideration and the bona fides of the transfer as separate, though interrelated criteria); Kimbell, 371 F.3d at 265 (articulating separate standards for a transaction to qualify as a bona fide sale, on the one hand, and for that sale to be for adequate and full consideration, on the other); Estate of Bongard v. Commissioner, 124 T.C. at 114 ("[T]he applicability of the bona fide sale exception depends on two requirements: '(1) A bona fide sale, meaning an arm's-length transaction, and (2) adequate and full consideration.'" (quoting Estate of

Harper v. Commissioner, 2002 WL 992347, at *18)). For the reasons explained below, the extent to which the formation of a family limited partnership involves a genuine pooling of contributed assets is more germane to the first prong (the bona fides of the transaction) than to the second (adequacy of consideration).

The criterion of value equivalence on which we relied in Estate of Harper does not distinguish between cases in which one partner contributes essentially all of the partnership assets and those that involve a genuine "pooling" of assets contributed by different partners. Whenever a partner receives a partnership interest in exchange for property, as long as the transaction is on arm's-length terms and the value of the contributed property is credited to the transferor's capital account, the value of the partnership interest issued to the transferor will be "derived solely" from the assets the transferor contributed.[9] Cf. Estate of Harper v. Commissioner, 2002 WL 992347, at *19. Of course, the more extensive the pooling of assets effected by a partnership's formation, the more significant the

_____

[9]To the extent of any discounts applied in valuing the partnership interest, that interest will not precisely equal the value of the transferred property, but the value of the interest will nonetheless be "derived from" the value of the transferred property. The value of the partnership interest will generally equal the value of the contributed property reduced by the product of that value and the applicable discount percentage. The value of the interest received by one transferor will generally be unaffected by the proportion or value of property contributed by other partners (except to the extent that the partners' proportionate interests affect the applicability of various discounts).

economic consequences of a decedent's exchange of property for a partnership interest, and the less that exchange is "only a vehicle for changing the form in which the decedent held his property".  Cf. Estate of Thompson v. Commissioner, T.C. Memo. 2002-246, 2002 WL 31151195, at *17.  Therefore, the degree of pooling is relevant to the question of the nontax bona fides of the transaction.  But we see no reason why the degree of pooling should affect the extent to which a partnership interest received in exchange for transferred assets should be treated as consideration received for those assets in applying section 2036(a) or section 2043(a).

As noted above, the several Courts of Appeals that have considered Estate of Harper's recycling of value theory generally treat the extent that formation of a family limited partnership effects a genuine pooling of assets contributed by different partners as relevant to the nontax bona fides of transaction rather than the adequacy of the consideration provided for contributed assets.  The Court of Appeals for the Fifth Circuit expressed that view most clearly in Kimbell, 371 F.3d at 267, stating flatly that any concern that a transaction simply recycles value "is better addressed under the 'bona fide sale' prong of th[e] exception."

In Estate of Bigelow, after agreeing with this Court and other courts that the application of discounts in valuing an interest in a family limited partnership does

not prevent the partnership's formation from qualifying for the bona fide sale exception, the Court of Appeals for the Ninth Circuit warned that an estate cannot qualify for the exception merely by establishing the proportionality of an exchange (that is, that each partner received an interest in the partnership proportionate to the value of the assets that partner contributed). "To avoid the reach of § 2036(a)", the court cautioned, "the Estate must also show the 'genuine' pooling of assets" and a ""potential [for] intangibles stemming from pooling for joint enterprise"". Estate of Bigelow v. Commissioner, 503 F.3d at 969 (citing Harper v. Commissioner, 83 T.C.M. (CCH) 1641, 1654 (2002), and Estate of Thompson v. Commissioner, 382 F.3d 367, 381 (3d Cir. 2004)). Because the bona fide sale and the adequate and full consideration prongs of the bona fide sale exception are "interrelated", the court reasoned, "[t]he validity of the adequate and full consideration prong cannot be gauged independently of the non-tax-related business purposes involved in making the bona fide transfer inquiry." Id. Thus, the court suggested, the need for an estate to show genuine pooling and the possibility of intangibles, in addition to establishing the proportionality of the exchange, arises from the interdependence between the bona fide sale and adequate consideration inquiries. The proportionality of the exchange might establish the adequacy of a partnership interest as consideration, but showing

genuine pooling and the possibility of intangibles is also required to establish the transaction's nontax bona fides.

In Estate of Thompson v. Commissioner, 2002 WL 31151195, at *17, we applied Estate of Harper's recycling of value theory in concluding that "the decedent's receipt of a partnership interest in exchange for his testamentary assets is not full and adequate consideration within the meaning of section 2036." The decedent's son had made a substantial contribution to one of the two family limited partnerships we addressed in Estate of Thompson, having contributed a ranch property and mutual funds in exchange for a 36.72% interest in the partnership. Nonetheless, we concluded that neither partnership effected a genuine pooling of assets because each partnership arranged matters so that the income generated by a particular partnership asset went directly to the partner who had contributed it. Further, our analysis in Estate of Thompson did not separately apply the two requirements of the bona fide sale exception that we had identified in Estate of Harper. Instead, we reasoned that the transactions before us in Estate of Thompson v. Commissioner, 2002 WL 31151195, at *18, "were not motivated by the type of legitimate business concerns that furnish[] 'adequate consideration.'"

The Court of Appeals for the Third Circuit affirmed our opinion in Estate of Thompson, agreeing, "[f]or essentially the same reasons" on which we had relied,

that the transaction at issue did not involve full and adequate consideration. Estate of Thompson v. Commissioner, 382 F.3d at 379. In elaborating on its conclusion, however, the Court of Appeals referred only to the absence of "any valid, functioning business enterprise" rather than on the proportion of partnership assets contributed by the decedent. Id. Moreover, the court distinguished Estate of Harper on the grounds that the decedent in that case had contributed over 99% of the total partnership assets. By contrast, the court observed, the formation of the two partnerships "involved substantial participation by decedent's family members and their respective spouses." Estate of Thompson v. Commissioner, 382 F.3d at 383. Thus, the court's conclusion that the formation of neither partnership was a bona fide sale for adequate and full consideration rested on the absence of business operations rather than the proportion of the assets the decedent contributed to the partnership. As the Court of Appeals for the Ninth Circuit recognized in Estate of Bigelow, a family limited partnership's conduct of legitimate business operations is more germane to the purposes of the entity's formation than to the adequacy of a partnership interest as consideration for contributed assets.

D.    Conclusion

For the reasons articulated above, we conclude that, when section 2036(a) (either alone or in conjunction with section 2035(a)) requires the inclusion in the value of a decedent's gross estate of the value of assets transferred to a family limited partnership in exchange for an interest in that partnership, the amount of the required inclusion must be reduced under section 2043(a) by the value of the partnership interest received by the decedent-transferor.  Consequently, when applicable, section 2036(a) (or section 2035(a)) will include in the value of a decedent's gross estate only the excess of the value of the transferred assets (as of the date of the decedent's death) over the value of the partnership interest issued in return (as of the date of the transfer).  Estate of Magnin v. Commissioner, T.C. Memo. 1996-25, 1996 WL 24745, at *11 ("[U]nder section 2043(a), the consideration received is to be valued at the time of receipt by the decedent[.]"), rev'd on other grounds, 184 F.3d 1074 (9th Cir. 1999).

IV.    The Validity of the Gift to the CLAT of Decedent's 99% Limited Partner Interest in NHP

Having concluded that neither section 2036(a)(2) nor (if applicable) section 2035(a) requires the inclusion in the value of a decedent's gross estate of the full value of the cash and securities transferred to NHP, we must now consider

respondent's claim that Mr. Powell lacked the authority to effect the gift to the CLAT of decedent's 99% limited partner interest in the partnership. As explained below, we conclude that the gift exceeded the authority granted to Mr. Powell by the POA so that, under California law, the gift was either void or revocable. If the gift was void, the value of the limited partner interest on the date of decedent's death would be includible in the value of her gross estate under section 2033. If the gift was revocable, that same value would be includible in the value of her gross estate under section 2038(a).

A.      Respondent's Argument

Respondent argues that, because Mr. Powell did not have authority under the POA to effect a gift of decedent's interest in NHP to the CLAT, that gift "is invalid under California law." Consequently, respondent concludes, the gift is "revocable" and the value of the 99% limited partner interest in NHP must therefore be included in the value of decedent's gross estate under section 2038(a). Section 2038(a) provides:

SEC. 2038.  REVOCABLE TRANSFERS.

(a) In General.--The value of the gross estate shall include the value of all property--

(1) Transfers after June 22, 1936.--To the extent of any interest therein of which the decedent has at any time made a

transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), * * * where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power * * * by the decedent alone or by the decedent in conjunction with any other person * * * to alter, amend, revoke, or terminate * * *

In arguing that the gift to the CLAT was invalid and revocable, respondent relies on a principle of California law, first developed by the courts and later codified in section 4264(c) of the State probate code,[10] that an attorney-in-fact does not have authority to make gifts unless that authority is expressly provided by the power of attorney. Thus, in respondent's view, the general authority provided to Mr. Powell in the POA to convey or otherwise deal in decedent's property did not authorize him to make gifts. Instead, his only authority to make gifts could be found in the provision of the POA that dealt specifically with gifts and authorized him to make them only to specified donees and only to the extent of the annual Federal gift tax exclusion.

---

[10]Before its amendment in 2011, Cal. Prob. Code sec. 4264 (West 2009) provided: "A power of attorney may not be construed to grant authority to an attorney-in-fact to perform any of the following acts unless expressly authorized in the power of attorney: * * * (c) Make or revoke a gift of the principal's property in trust or otherwise." (The 2011 amendment made no change to subdivision (c) of sec. 4264 and only a nonsubstantive change to the introductory paragraph.)

B.     The Estate's Argument

The estate argues that Mr. Powell's authority to transfer decedent's NHP interest by gift to the CLAT derived not from the specific provision of the POA dealing with gifts but instead from the general grant of authority to deal in decedent's property.  The estate claims support from two of our prior cases, Estate of Bronston v. Commissioner, T.C. Memo. 1988-510, 1988 Tax Ct. Memo LEXIS 540, and Estate of Pruitt v. Commissioner, T.C. Memo. 2000-287, 2000 WL 1281311, in which, according to the estate, we "agreed that an agent had authority to make gifts where the power of attorney for property had language similar to * * * [decedent's] power of attorney for property."

The estate argues that Cal. Prob. Code sec. 4264(c) did not deprive Mr. Powell of the authority to make the gift in issue "because the gift was consistent with * * * [decedent's] history of charitable giving and with the provisions of * * * [her] estate planning documents."  In support of that claim, the estate cites Torres v. Torres, 37 Cal. Rptr. 3d 754 (Ct. App. 2006).

Finally, the estate argues that, even if the POA did not provide Mr. Powell with authority to make gifts in excess of the annual gift tax exclusion, his gift to the CLAT of decedent's NHP interest was nonetheless valid under the POA's ratification provision.

C.    Analysis

State law determines the legal effect of gifts purportedly made under a power of attorney.  Estate of Pruitt v. Commissioner, 2000 WL 1281311, at *6 (citing Morgan v. Commissioner, 309 U.S. 78 (1940)).  The parties agree that, in the present cases, California law controls.

California caselaw contravenes the estate's claim that the general authority granted to Mr. Powell to convey decedent's property included the power to make gifts.  California courts have long applied the general principle requiring an express grant of authority to make gifts to hold that general grants of authority to convey property do not provide the power to make gifts.  See Shields v. Shields, 19 Cal. Rptr. 129, 130-131 (Ct. App. 1962) (citations omitted) ("A power of attorney conferring authority to sell, exchange, transfer or convey real property for the benefit of the principal does not authorize a conveyance as a gift or without a substantial consideration[,] and a conveyance without the scope of the power conferred is void."); Bertelsen v. Bertelson, 122 P.2d 130 (Cal. Ct. App. 1942) (holding that grant of general authority to convey property did not encompass gifts); see also Estate of Swanson v. United States, 46 Fed. Cl. 388, 392 (2000) (applying California law in Federal estate tax case and concluding that a power of attorney that gave an attorney-in-fact "significant powers to manage and convey"

the decedent's property "could not give him the power to make gifts without expressly doing so"), aff'd, 10 F. App'x 833 (Fed. Cir. 2001).

Further, the estate's position finds no support from our opinions in Estate of Bronston or Estate of Pruitt. In each of those cases, we interpreted a provision in a power of attorney giving the attorney-in-fact general authority to convey property to encompass the power to make gifts. But those cases applied the law of States other than California (New Jersey in Estate of Bronston and Oregon in Estate of Pruitt). In Estate of Bronston v. Commissioner, 1988 Tax Ct. Memo LEXIS 540, at *12, we emphasized that the Commissioner had "not produced any authority that would suggest 'grant [and] convey' is inappropriate gift language in New Jersey." By contrast, in the present cases, respondent relies on a substantial line of authority under California law to the effect that the power to make gifts must be expressly provided and is not included within the scope of a general grant of authority to convey property. In Estate of Pruitt v. Commissioner, 2000 WL 1281311, at *6, we observed that "Oregon * * * [had] not established, either through case law or statute, a bright-line rule flatly prohibiting gifts by attorneys-in-fact to themselves or to third parties absent express written authorization in a power of attorney." By contrast, California, first through caselaw and later by statute, has long applied just such a rule.

Torres does not support the estate's claim that Mr. Powell's gift to the CLAT of decedent's NHP interest was valid notwithstanding Cal. Prob. Code sec. 4264(c). While the California Court of Appeals upheld in that case a transfer made pursuant to a power of attorney that did not expressly grant the power to make gifts, the court did not, as the estate claims, "disregard" the plaintiff's argument that the transfer was invalid under section 4264(c). Because the plaintiff was "the party seeking to invalidate the deed", he bore the burden of proof. Torres, 37 Cal. Rptr. 3d at 759. The court concluded that he had not met his burden of establishing that the transfer in issue was a gift because he had "failed to introduce any evidence of lack of consideration". Id.

We can readily dismiss the estate's ratification argument. To begin with, ratification generally occurs only after the agent's act in question. See, e.g., Estate of Swanson, 46 Fed. Cl. at 392 n.5. More to the point, the provision on which the estate relies only ratifies acts done "by virtue of" the POA. By its terms, the provision would not cover acts done outside the authority granted by the POA. Interpreting the provision to authorize acts otherwise beyond the granted authority would render meaningless any limitations or restrictions on the authorized powers. In particular, interpreting the provision to authorize gifts to decedent's sons in excess of the annual gift tax exclusion (or gifts in any amount to unrelated donees)

would conflict with the California rule that any authority to make gifts must be granted expressly. Under California law, the ratification provision cannot be read to authorize gifts any more than the general authority to convey property can be so read.

Therefore, we will grant respondent's motion for summary adjudication that the value of the 99% limited partner interest in NHP, as of the date of decedent's death, is includible in the value of her gross estate, either because the purported gift of that interest was void (so that she held title to that interest upon her death) or because the purported gift was revocable (so that the partnership interest is includible in her gross estate by reason of section 2038(a)).[11] Our granting of

---

[11]As noted in the text above, the California Court of Appeals in Shields v. Shields, 19 Cal. Rptr. 129, 131 (Ct. App. 1962), characterized as "void" a transfer purportedly made by an attorney-in-fact that exceeded the authority granted to him. It follows that any such transfer would not convey valid title, and legal ownership of the purportedly transferred property would remain with the attorney's principal. See Bertelsen v. Bertelson, 122 P.2d 130, 133 (Cal. Ct. App. 1942) (holding that deed executed by attorney-in-fact beyond the scope of his authority "conveyed no title"). Nonetheless, when the Court of Federal Claims addressed such a situation in Estate of Swanson v. United States, 46 Fed. Cl. 388, 393 (2000), aff'd, 10 F. App'x 833 (Fed. Cir. 2001), it concluded that the impact of the gifts in issue being void was that the decedent could have "recalled" them. Thus, the court concluded: "Section 2038(a)(2) controls the result with regard to these void gifts." Id. If the gifts were really void, rather than merely voidable, and thus conveyed no title, it is not clear why application of sec. 2038 was necessary to include the purportedly gifted property in the decedent's estate. In any event,

(continued...)

respondent's motion for partial summary judgment on two of the three claims he advanced in support of the determined estate tax deficiency requires that we deny the estate's motion for summary judgment in regard to that deficiency. However, it follows from our conclusion that the purported gift to the CLAT of decedent's limited partner interest in NHP was either void or revocable that the estate is not liable for the gift tax deficiency respondent determined. See sec. 25.2511-2(c), Gift Tax Regs. ("A gift is incomplete in every instance in which a donor reserves the power to revest the beneficial title to the property in himself."). Therefore, we will grant the estate's motion for summary judgment in regard to the gift tax deficiency.[12]

V.    Conclusion

As noted at the outset, our disposition of the parties' motions resolves or renders moot the legal issues raised by the determined deficiencies and leaves no

---

[11](...continued)
because of sec. 2038, the distinction between a void and voidable gift appears to be of no consequence.

[12]Because we do not uphold the gift tax deficiency respondent determined, we do not sustain his adjustment increasing the value of decedent's gross estate under sec. 2035(b). That adjustment, however, should have had no effect on decedent's taxable estate in any event because any gift tax deficiency upheld would have increased the deduction allowed by sec. 2053(a)(3) for claims against the estate. See sec. 20.2053-6(d), Estate Tax Regs. ("Unpaid gift taxes on gifts made by a decedent before his death are deductible.").

apparent contested questions of fact. By reason of section 2036(a)(2) (either alone or in conjunction with section 2035(a)) and section 2043(a), the value of decedent's gross estate includes the excess of the value, as of the date of her death, of the cash and securities she transferred to NHP over the value, as of the date of the exchange (which, by stipulation, was August 8, 2008), of the 99% limited partner interest issued in return. Under either section 2033 or section 2038(a), the value of decedent's estate also includes the value of the 99% limited partner interest in NHP as of the date of her death. If the value of that limited partner interest (whatever that value might have been, after taking into account any applicable discounts) did not change between August 8, 2008, and decedent's death one week later on August 15, 2008, it would follow that the combined effect of section 2036(a)(2), section 2035(a) (if applicable), section 2043(a) and either section 2033 or section 2038(a) would be to include in the value of decedent's gross estate the value, as of the date of her death, of the cash and securities she transferred to NHP. The parties have stipulated to the value of those assets on August 8, 2008, and the estate tax deficiency respondent determined rests on the assumption their value did not change between the date of transfer and the date of

decedent's death.[13]  Further, the estate has made no argument that the value of those assets declined during that period.  In the absence of a dispute about the extent to which the value of those assets changed between August 8 and 15, 2008, we see no reason to conduct a trial in the present cases.

An appropriate order will be issued, and decisions will be entered for petitioner in docket No. 24703-12 and under Rule 155 in docket No. 24731-12.

Reviewed by the Court.

VASQUEZ, THORNTON, HOLMES, GUSTAFSON, MORRISON, BUCH, and ASHFORD, JJ., agree with this opinion of the Court.

FOLEY and PARIS, JJ., concur in the result only.

---

[13]Because respondent apparently based his $10,022,570 increase to the value of decedent's gross estate on the amount Duff & Phelps determined to be the balance of NHP's Polaris account on August 8, 2008, the difference between respondent's adjustment and the stipulated value of the cash and securities transferred from decedent's revocable trust to NHP, $10,000,752, does not reflect a contested fact about the extent of any appreciation in those assets between August 8 and 15, 2008.  Respondent apparently agrees that the amount of the adjustment should be measured by the value of the transferred assets on the earlier date.  The parties have resolved any dispute about that value by their stipulation.

LAUBER, J., concurring in the result only: I concur in the result that the Court reaches today. I write separately to emphasize what the Court did not decide and to highlight what the Court need not have decided.

The decedent's son and heir, acting on his own behalf and on behalf of his mother as fiduciary, engaged in what is best described as aggressive deathbed tax planning. The IRS had available a number of theories on which to challenge the transactions he undertook. One theory is that the partnership was invalid ab initio, so that the assets purportedly transferred to it were in fact owned by the decedent when she died one week later. In that event, the $10 million of cash and securities would be includible in the value of her gross estate under section 2033, which requires inclusion of "all property to the extent of the interest therein of the decedent at the time of his death."

There are compelling reasons to question whether a valid partnership was ever formed here. In comparison with the $10 million in cash and securities that the decedent relinquished for her alleged partnership interest, the other two supposed partners--her sons and heirs--contributed nothing more than unsecured promissory notes. Decedent's contribution was made by one of her sons, ostensibly on her behalf as trustee of her revocable trust, a week before her death and while she was hospitalized and in intensive care. That son was essentially nego-

tiating with himself: He signed the partnership agreement both as general partner of the partnership and for his mother as her trustee.

Ruling on motions for summary judgment, the Court does not address this "partnership invalidity" theory, apparently because respondent did not clearly articulate it and because it could require resolving disputed issues of fact. Instead, assuming arguendo that the partnership was valid, the Court relies principally on section 2036(a)(2). That section requires inclusion in the gross estate of all property "to the extent of any interest therein of which the decedent has at any time made a transfer," if the decedent has retained "the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom."

The Court correctly concludes that section 2036(a)(2) applies here. See op. Ct. pp. 14-21 (relying on Estate of Strangi v. Commissioner, T.C. Memo. 2003-145, 85 T.C.M. (CCH) 1331, aff'd on other grounds, 417 F.3d 468 (5th Cir. 2005)). The decedent clearly "made a transfer" of the $10 million in cash and securities. And she clearly retained the proverbial "string" that pulls these assets back into her estate.

But the Court concludes, see op. Ct. p. 22, that section 2036(a) does not require "the inclusion in the value of decedent's gross estate of the full date-of-

death value of the cash and securities," while admitting that the statute, "read in isolation, would require that result." See Estate of Thompson v. Commissioner, T.C. Memo. 2002-246, 84 T.C.M. (CCH) 374, 386 ("Section 2036(a) effectively includes in the gross estate the full fair market value * * * of all property transferred in which the decedent had retained an interest." (Emphasis added.)). Instead, the Court holds that section 2036(a)(2) brings into the gross estate a much smaller sum: the value of the cash and securities ($10 million) minus the value of the limited partnership interest that the decedent got in exchange. Otherwise, the Court says, the $10 million would be included in her estate twice: first via section 2036(a)(2) and again via her partnership interest, which would be separately includible as property of the estate under section 2033.

This is where I part company with the Court, because I do not see any "double inclusion" problem. The decedent's supposed partnership interest obviously had no value apart from the cash and securities that she allegedly contributed to the partnership. The partnership was an empty box into which the $10 million was notionally placed. Once that $10 million is included in her gross estate under section 2036(a)(2), it seems perfectly reasonable to regard the partnership interest as having no distinct value because it was an alter ego for the $10 million of cash and securities.

This is the approach that we have previously taken to this problem. See Estate of Thompson, 84 T.C.M. (CCH) at 391 (concluding that the decedent's interest in the partnership had no value apart from the assets he contributed to the partnership); Estate of Harper v. Commissioner, T.C. Memo. 2002-121, 83 T.C.M. (CCH) 1641, 1654; cf. Estate of Gregory v. Commissioner, 39 T.C. 1012, 1020 (1963) (holding that a decedent's retained interest in her own property cannot constitute consideration under section 2043(a)). And this is the approach that I would take here. There is no double-counting problem if we read section 2036(a)(2), as it always has been read, to disregard a "transfer with a string" and include in the decedent's estate what she held before the purported transfer--the $10 million in cash and securities.

Rather than take this straightforward path to the correct result, the Court adopts as the linchpin of its analysis section 2043(a). Neither party in this case advanced any argument based on section 2043(a); indeed, that section is not cited in either party's briefs. And as the Court recognizes, see op. Ct. p. 28, we have not previously applied section 2043(a), as the Court does here, to limit the amount includible in a decedent's gross estate under section 2036(a). See, e.g., Estate of Harper, 83 T.C.M. (CCH) at 1654 (ruling that section 2043(a) "is inapplicable

where, as here, there has been only a recycling of value and not a transfer for consideration").

Invoking section 2043(a), the Court divides the $10 million into a "dough-nut" and a "doughnut hole." The "doughnut" consists of the limited partnership interest allegedly received by the decedent; on the Court's theory, this is pulled back into the gross estate via section 2035 or 2038, and its value then included under section 2033. As a result, section 2036(a), paired with section 2043(a), has the much-reduced function of bringing back into the gross estate, not the full value of the $10 million as that section by its terms requires, but only "the amount of any discounts (that is, the doughnut holes) allowed in valuing the partnership interest." See op. Ct. pp. 26-27. This theory seemingly validates the estate's claimed discount for lack of marketability, which seems highly suspect on the facts presented.

The Court's exploration of section 2043(a) seems to me a solution in search of a problem. It is not necessary; the parties did not think it was necessary; and our prior cases show that it is unnecessary. And even if the section 2043(a) issue were properly presented, I am not sure that the Court's application of that provi-sion is correct. It is far from clear to me that the decedent's partnership interest--a

consequence of the now-disregarded transfer--can constitute "consideration in money or money's worth" within the meaning of section 2043(a).

Indeed, the Court seems to acknowledge the analytical infirmities of its approach, conceding that its formulation could "result in a duplicative reduction in transfer tax." See op. Ct. n.7. The possibility of a "duplicative reduction in transfer tax" may invite overly aggressive tax planning. By adopting an untried new theory without first hearing from the parties, we risk creating problems that we do not yet know about. The more prudent (and conservative) approach in my view would be to adhere to the letter and spirit of our precedent, leaving the law in the relatively stable position it appears to occupy now.

MARVEL, GALE, GOEKE, KERRIGAN, NEGA, and PUGH, JJ., agree with this concurring opinion.